723 P.2d 914

**BOYDSTUN BEACH ASSOCIATION, an Idaho corporation, and the Class Claiming a Right to an Easement in Lot 6 of Block 1 of the Recorder's Plat of Lot 1, Section 8, Township 18 North, Range 3 East of the Boise Meridian, Valley County, Idaho, Plaintiffs-Appellants-Cross Respondents,**

v.

**Wayne F. ALLEN and Shirley Allen, husband and wife, Defendants-Respondents-Cross Appellants.**

**No. 16001.**

Court of Appeals of Idaho.

July 24, 1986.

372

Gordon S. Nielson, Boise, for plaintiffs-appellants-cross respondents.

Frank T. Elam, McCall, for defendants-respondents-cross appellants.

SWANSTROM, Judge.

This is a dispute between persons claiming rights to an easement located on the shore of Big Payette Lake and the owners of the servient estate. The easement provides access to the lake, along with boating, bathing and parking privileges. The easement users sued to force the landowner to remove obstructions on the easement. The owner built a house close to the easement area, and a landscaped lawn on the easement. The district judge ruled that the improvements could remain and issued extensive regulations governing the use of the easement. From this decision the easement owners, represented by the Boydstun Beach Association, appeal. Wayne and Shirley Allen, the owners of the beach front lot burdened by the easement, have cross-appealed. They contend that the district court erred in giving easement rights to all present and future owners and lessees of property within a certain thirty acre tract. This was the result of the court's ruling that the easement was appurtenant to the thirty acre tract as well as to a six acre tract. We affirm in part, reverse in part and remand.

The Association attacks the rules and regulations in the plan as being beyond the district court's authority. Other issues raised are that the court erred in (1) failing to order the Allens to remove the obstructions and failing to enjoin further obstruction; (2) in treating the easement as a nuisance in preparing the plan, and thus

exists. The parties in the present

modifying the easement; (3) in ruling that the easement users would not be permitted to park on the Allen lot; and (4) in requiring the Association to move its dock.

Before addressing the issues presented a brief history of the land in question would be helpful. The easement was created in 1926 by a deed conveying six acres from Samuel and Gertrude Hays to W.B. Boydstun and P.T. Hayes. The six acre tract is a triangular parcel lying to the west of Warren Wagon Road in the southwest corner of Government Lot 1, Section 8, Township 18 North, Range 3 East, Boise Meridian. Adjacent to the west is the thirty acre parcel located in Section 7. The easement purports to appertain to both parcels. This land is near McCall and the Jasper Subdivision is located within these two parcels. The deed created the beach easement on the easterly side of Warren Wagon Road. Access from the road to the lake was granted along a twenty-five foot strip and the boating, bathing and parking privileges were granted along a two hundred foot length of lakefront property seventy-five feet wide. The Allens bought a lakefront lot burdened by this easement. Their lot is on the southerly side of the driveway easement.

Ownership of land northerly of the driveway easement was settled in *White v. Boydstun*, 91 Idaho 615, 428 P.2d 747 (1967). Title to land claimed by Neal and Pearl Boydstun was quieted in the Whites. In the same action, title to a seventy-five foot lot southerly of the driveway easement was quieted in the Allens' predecessor. The Boydstuns continued to own the twenty-five foot strip subject to the driveway easement. The Boydstuns also claimed ownership of a long narrow strip of "gap" property which they asserted existed between the driveway easement and the Allen lot. They later purported to convey the twenty-five foot strip and the "gap" property to Boydstun Beach Association. In *Allen v. Boydstun*, 111 Idaho 188, 722 P.2d 497 (Ct.App.1986), this Court affirmed a decision holding that the Allen lot extends to the southerly edge of the twenty-five foot easement and that no

"gap" exists. The parties in the present action agree that the Association now owns the twenty-five foot strip which is burdened by the driveway easement.

Over the years the easement owners lost about half of the beachfront easement when the owner of land adjacent to the Allen lot to the southeast developed and enclosed the easement area above the high-water mark. The easement owners did not timely respond to this activity. A district court ruling that the easement had been extinguished by adverse possession, in the area of the encroachment, was upheld by this Court in *Shelton v. Boydstun Beach Association*, 102 Idaho 818, 641 P.2d 1005 (Ct.App.1982).

The twenty-five foot driveway easement lies at the northwest end of the beach easement and abuts the Allen lot on the northwest side. The Allens built their house and deck so that it does not encroach on the easement. However, nearly all of their yard is on the lakefront easement, including grass, landscaping and a sprinkler system. At the high-water line they placed a low retaining wall made from railroad ties. On the northwest side of the lawn the Allens placed mounds of dirt and rock and planted shrubs and trees. As a result, the entire easement area above the high-water line is developed except the part that overlaps the twenty-five foot driveway strip owned by the Association. Meanwhile the Association placed a new dock at the same location as their old dock in front of the Allen lot. The Allens also installed a dock of their own.

The Association sought an injunction prohibiting any further interference with the easement, and an order directing the Allens to remove the obstructions (trees, rocks, bushes, railroad ties, and lawn sprinklers). The Association also wanted a decree establishing ownership of the easement in the persons owning land within the six acres and the thirty acres by virtue of the 1926 deed or by prescription. The Allens sought

and obtained an order certifying the plaintiffs' suit as a class action.[1]

The district judge ruled that the easement was appurtenant to the six acres and to the thirty acres. He also ruled that the rocks and mounds of earth placed by Allen made the easement unusable for vehicle parking and turning and that the retaining wall and land improvements prevented the Association members from using the easement as they have in the past for picnicking, boating, bathing, and building camp fires above the high-water line. The judge determined that it was necessary to identify the persons entitled to use the easement and to establish a plan of usage and maintenance of the easement. He concluded that parking and fire building on the developed portion of the easement above the high-water mark would constitute a nuisance to the owners of the servient estate, and that there is enough room to park and turn around on the twenty-five foot driveway owned by the Association. The judge also ordered the Association to place its dock adjacent to the same twenty-five foot strip. He further ordered all members of the class, their heirs, assigns, and grantees to participate with the Association in maintaining the easement. The judge held open the action for enforcement of the judgment and rules and regulations comprising the easement use plan.

The plan governs development, maintenance, and use of the easement. Under the heading of "Required Development" the plan directs that the driveway portion of the easement be fenced on all boundaries to the high-water line of the lake except across the lakefront. This fence is to provide security and prevent unauthorized access to the easement. A gate to the driveway easement near the Warren Wagon Road will be controlled by some sort of security device or lock. Only persons authorized to use the easement are to have a key or other means of access. "Private property" and "no trespassing" signs are

to be posted. The beach portion of the easement is to be marked at its four corners with stone pillars three feet high by two feet square.

Under the heading "Permitted Development," the Allens are authorized to install additional sprinklers and develop more lawn and landscaping so as not to exclude use of the area by the easement owners. They are also authorized to have a dock.

The owners of the dominant estate are to maintain the easement. This includes such items as daily trash removal, fence maintenance, security provision, maintenance of parking areas and membership in the local fire district.

The plan limits use of the easement to residential occupants of the dominant estate and their guests. The allowed purposes of the easement are to exercise boating and bathing privileges and to conduct picnics and cookouts with portable charcoal broiling and roasting devices. The hours of use are from 6:00 a.m. until 12:00 midnight. The Association is to provide two-day written notice of any gathering planned to include more than ten people. The Association is directed to secure and keep in effect a policy of liability insurance protecting the owners of the servient estate and adjoining lands from damage or loss occasioned by its members. It is also charged with the responsibility of providing fire protection. The plan also recommends that those entitled to use the easement become members of the Association.

## I

Before addressing the Association's issues we will consider the Allens' cross-appeal. The district court ruled that the easement was appurtenant to both the six acre and to the thirty acre parcels. The court viewed the prior *White* decree as ruling that the easement was appurtenant either by grant or by prescription. The court ruled that Allen had not overcome

---

1. The class is comprised of Association members and non-members who own land in both parcels and who opted to participate. Membership in the Association is conditioned upon ownership of land in either of these two parcels. Only two owners in the dominant estate opted out of this litigation.

the presumption that, in case of doubt, an easement should be presumed appurtenant. *Nelson v. Johnson,* 106 Idaho 385, 679 P.2d 662 (1984).

The district court decree in the *White* case named several persons—parties to that action—who were said to have the easement in question. The decree did not designate which of these persons are owners of property in the thirty acres and which are owners in the six acres. Neither did the list purport to designate *all* of the persons who have the easement.

Allen concedes that the driveway and beach easement is appurtenant to the six acres in Government Lot 1 and, therefore, that the easement will inure to the benefit of present as well as future owners of property within the six acres.

It is the Allens' contention that the *only* owners of property within the thirty acres who have the easement are those who were named in the *White* decree. As to them, the Allens contend the easement is only in gross and will not benefit subsequent owners or transferees from the present owners. Thus, they contend that the district judge in this action erred in expanding the list of owners (in the thirty acres) and in holding that the easement, being appurtenant, will run with the land.

The gist of the Allens' argument is that the easement could not become appurtenant to the thirty acre parcel unless the grantees named in the October 20, 1926 deed, P.T. Hayes and W.B. Boydstun, had an ownership or possessory interest in the thirty acres on or after that date. The Allens introduced evidence showing that W.B. Boydstun had owned the thirty acre parcel but had conveyed it to Samuel H. Hays in a deed dated May 7, 1914, and that Hays in turn conveyed the parcel to another couple before the easement was granted. The appellants argued, on the other hand, that because the deed from W.B. Boydstun to Samuel H. Hays was not recorded until April 2, 1927, W.B. Boydstun was a record owner of the parcel when the easement was granted to W.B. Boydstun. They suggest that non-recordation of the deed for nearly thirteen years raises an inference that Boydstun at least retained a vendee's interest in the property; that the interest existed, and was a matter of record, when the easement was created in October 1926. The Allens contend, though, that this is speculation unsupported by any evidence as to the reasons for the delayed recording. They ask us to hold there is a legal presumption of delivery of the deed from Boydstun to Hays on the date of that deed. We think it is unnecessary to choose between these arguments because we believe that the Allens' basic premise overlooks certain language in the deed creating the easement.

■ The easement was granted to P.T. Hays and W.B. Boydstun as "parties of the second part *and to their heirs and assigns,* and to their tenants, renters and leaseholders during possession of any part of the land conveyed by this deed [the six acres], and, or during possession of any part of the south thirty acres...." (Emphasis added.) Even if W.B. Boydstun was only a *record* owner of the thirty acre parcel when the six acres and the easement were conveyed to him in October 1926 and he had already conveyed away the thirty acres, it is nevertheless clear that his "assigns" were then the owners of the thirty acre parcel. The phrase "heirs and assigns" "generally comprehends all those who take either immediately or remotely from or under the assignor, whether by conveyance, devise, descent, or act of law." BLACK'S LAW DICTIONARY 109 (5th ed. 1979). Under this definition the district court was correct in holding that the Allens have not overcome the presumption of appurtenance.

■ Next we address the Association's related argument concerning who has easement rights. The court's judgment stated that the owners of property within the thirty acre and the six acre tracts (the "dominant estate") have the easement. Yet in its "amended rules and regulations" the court limited the *use* of the easement to "residential occupants of the dominant estate

and the servient estate." [2] The Association contends that the court erred in placing these limitations upon the use of the easement. We agree.

The deed creating the easement gives the right of its use to the "parties of the second part and to their heirs and assigns," and to "their tenants, renters and leaseholders during possession" of the six acres or south thirty acres. Thus, there are two groups who have the benefit and use of the easement. The owners of the dominant estate are the first group; we will refer to them simply as "owners." "[T]heir tenants, renters and leaseholders during possession of any part of ... [the dominant estate]" comprise the second group. For convenience, we will refer to them as "tenants in possession." Because the district judge apparently intended to limit the use of the easement only to "residential occupants," we believe he erred. The deed—to use our terms—grants the easement to "owners" *and* to "tenants in possession," regardless of whether they are also "residential occupants."

■ The court also ruled that members of groups or organizations owning real property within the dominant estate shall not be entitled to easement rights "unless such persons qualify as residential occupants or their guests." While we believe that the purpose of this regulation is appropriate, for the same reasons we have just discussed, we hold that the quoted language is too restrictive. As we have noted, over the years the area of the beach easement has been reduced to half of its original size while the number of persons entitled to use the easement has increased. Therefore, regulations which limit the use of the easement only to those persons who were clearly intended to have the easement will be upheld. However, the regulations must not deny access to persons who are in fact "owners" or "tenants in possession." The district court should revise part II of its rules and regulations in accordance with

this opinion to restate what persons are entitled to use the easement.

## II

Having determined who has easement rights, we next turn to the use of the easement. The Association contends that the district court exceeded its powers in formulating the plan of usage. We perceive the objections to the plan to be twofold. First, the Association claims the plan contravenes the easement as written. The plan is said to rewrite the easement, extinguishing portions of it. Second, the Association argues that the district judge exceeded his equitable powers in establishing rules and regulations regarding the uses of the easement not specifically addressed by the written easement.

■ Our analysis is guided by principles stated at 5 RESTATEMENT OF PROPERTY, SERVITUDES § 486 (1944):

The possessor of land subject to an easement created by conveyance is privileged to make such uses of the servient tenement as are not inconsistent with the provisions of the creating conveyance.
*Comment:*
a. *Uses not inconsistent with conveyance.* So far as the language of the conveyance creating an easement precisely defines the privileges of the owner of it, the privileges of use of the owner of the servient tenement are also precisely defined. As the precision of definition decreases, the application of the principle that the owner of the easement and the possessor of the servient tenement must be reasonable in the exercise of their respective privileges becomes more pronounced. Under this principle, the privilege of use of the possessor of the servient tenement may vary as the respective needs of himself and the owner of the easement vary.

Under § 486 it is necessary to determine the precision of the granting language. To

---

**2.** The court also permitted use of the easement by guests of the "residential occupants." Nei-

ther party disputes this determination.

the degree privileges are expressly granted the easement owner's rights are paramount to those of the servient owner. These respective rights are correlative and where the grant is general in nature the owner of the servient estate is entitled to use the estate in any manner not inconsistent with, or which does not materially interfere with, the use of the easement by the owner of the dominant estate. *City of Los Angeles v. Ingersoll-Rand Company,* 57 Cal. App.3d 889, 129 Cal.Rptr. 485 (1976); *Western Massachusetts Electric Co. v. Sambo's of Massachusetts, Inc.,* 8 Mass.App. 815, 398 N.E.2d 729 (1979). Thus we begin by isolating the privileges specifically granted by the easement.

■ The 1926 easement grants without limitation parking, boating and bathing privileges with the following language:

[ingress, egress privileges], together with parking space extending along the beach in a southeasterly direction 200 feet from north line of said drive, and extending 75 feet in width from the meander line, and boating and bathing privileges along said 200 ft [sic] strip, and these presents provide, that, no structures or tents shall be erected along said 200 feet of beach, or parking space; and that said second parties may, at their option, assist in the improvement and maintenance of said drive and parking space.

The order of the district court treats the express privileges as granted in general terms. This approach bypasses the legal rights of the easement owners and goes directly to the equitable resolution of the parties' conflicting interests. The language of the easement itself grants parking privileges along the entire 200 by 75 foot strip. The judge found as a fact that the placement of rocks and mounds of earth by the Allens interfered with parking on the easement,[3] but ruled that parking on what is now the Allen lawn would consti-

tute a nuisance. The order of the district court went on to limit parking to the twenty-five foot strip where access is provided. This restriction contravenes the express parking grant and therefore must be reversed.

■ Where a servient landowner takes the land subject to the easement, as did the Allens, he must refrain from interfering with the use of the easement, and the court has the authority to order removal of obstructions. *Brown v. Alabama Power Company,* 275 Ala. 467, 156 So.2d 153 (1963); *Warsaw v. Chicago Metallic Ceilings, Inc.,* 35 Cal.3d 564, 199 Cal.Rptr. 773, 676 P.2d 584 (1984). An easement owner is entitled to relief upon a showing that he is obstructed from exercising privileges granted by an easement. *Connecticut Light and Power Co. v. Holson Co.,* 185 Conn. 436, 440 A.2d 935 (1981). This case must be remanded for entry of an order enjoining the Allens from interfering with parking privileges held by the easement owners and for removal of the obstructions to parking.

■ The Allens contend, and the district court agreed, that the easement allows them the option of assisting in the improvement and maintenance of the easement. The language gives this option to the "second parties" who were the predecessors-in-interest to the easement owners, not to the Allens. Even if the language referred to the Allens, we would not construe it to mean that they have the option to interfere with the granted privileges.

The district court apparently sought to preserve the existing improvements to the easement area while allowing those with easement rights the fullest use available consistent with the changed use of the servient estate. The district court's efforts to accommodate the interests involved and arrive at a realistic solution to the problem are commendable. However, since the plan

---

**3.** In *Shelton v. Boydstun Beach Association,* 102 Idaho 818, 820, 641 P.2d 1005, 1007 (Ct.App. 1982), we noted—as the trial court had found— that "the Sheltons constructed a retaining wall, erected fences, and planted grass and flowers

within the easement. These improvements were inconsistent with the express purposes of boating, bathing, driving and parking, set forth in the grant of easement."

adopted by the court does not take into account the full legal rights of the dominant estate owners, we are constrained to reverse and remand for the formulation of a new plan of use. Since preservation of the improvements is central to the plan, we reverse it in its entirety. However, this does not mean that portions of the plan cannot be re-incorporated into the new plan.

In reviewing the other provisions of the plan we look first to the written easement. We find that three parts of the plan contravene the easement. These involve a fence, hour restrictions and the Association dock. The easement prohibits structures on the beach or parking space, but otherwise does not limit the allowed privileges in location or time of use.

■ A fence erected through the seventy-five foot easement between land owned by the Allens and the Association owned land would obstruct parking and turning and violates the prohibition against structures. This seventy-five foot segment of the southeasterly boundary of the driveway easement should not be obstructed with structures, pillars or artificial barriers. The remainder of the fences and the gate at the southwesterly end of the driveway easement do not suffer from these infirmities. Rather, limiting access to the easement to those with use rights is sensible and benefits both parties.

■ The absolute prohibition of easement use between the hours of 12:00 midnight and 6:00 a.m. impermissibly restricts the granted privileges. This does not give the easement users license to disturb the peace, but they are entitled to be on the easement during these hours.

■ All privileges expressed in a written easement and those necessarily incident to enjoyment of the express rights pass with the easement. *Smith v. Wright*, 161 Colo. 576, 424 P.2d 384 (1967); *City of Pasadena v. California-Michigan Land and Water Co.*, 17 Cal.2d 576, 110 P.2d 983 (1941). Incident to the boating easement is the right to place and use a dock. Boating

privileges, like parking, are granted to the entire easement area. Thus, the easement owners, by the terms of the easement, are entitled to place the dock where they wish. The court erred by restricting the dock placement to the twenty-five foot strip owned by the Association. Allen asserts the court merely forced the Association to place the dock in accordance with a permit issued by the Idaho Department of Lands. The Association applied for and received the permit to place a dock adjacent to the twenty-five foot strip owned by the Association. Instead, the Association rebuilt its existing dock adjacent to the Allen lot. If the Association has proceeded in violation of the laws and regulations regarding navigational encroachment, administrative relief is the appropriate remedy. *See* chapter 1, title 58, Idaho Code.

■ The district court found that the lawn improvements and the retaining wall prevented the easement owners from using the easement as it had been used in the past for building fires above the high-water line. The court considered such fires a potential nuisance and enjoined the practice. We regard the open fire prohibition as reasonable. The rule is that, absent language in the easement to the contrary, the uses made by the servient and dominant owners may be adjusted consistent with the normal development of their respective lands. *Western Massachusetts Company v. Sambo's of Massachusetts, Inc., supra; Jones v. Edwards*, 219 Or. 429, 347 P.2d 846 (1959). The lakefront has been developed to the point that the smoke and threat of damage could easily create a nuisance. The right to have fires is not granted by the easement and hence is subject to reasonable adjustment. Mandating the use of roasting devices is a reasonable balance between the easement owner's interest in picnicking and the protection and enjoyment of the servient estate. We also believe the required placement of toilet or sanitation facilities is reasonable. This does not interfere with the granted privileges and is proper in light of

the normal development of the servient and dominant estates.

The Association asserts that the court exceeded its equitable powers in ordering that the Association provide liability insurance for the protection of the owners of the servient estate and adjoining land from damage caused by anyone using the easement. We agree. This condition places a new burden upon the use of the easement that is not justified.

The court found that the retaining wall interfered with the use of the easement, but concluded that it was necessary to prevent erosion of the servient estate. However, there was no evidence of erosion occurring prior to the construction of the wall. Further findings are required to determine if the wall obstructs the parking, boating or bathing privileges granted by the easement; and if so, whether it is necessary to preserve the servient estate. The court should indicate whether these findings are based on the specific language of the easement or on the principles applicable to easements granted in general terms.

This case is remanded for further proceedings consistent with this opinion. Costs to appellant, Boydstun Beach Association. No attorney fees awarded on appeal.

WALTERS, C.J., and BURNETT, J., concur.