985 P.2d 1127

Dennis K. CONLEY, Plaintiff–
Counterdefendant–
Appellant,

v.

Craig D. WHITTLESEY, a single person;
Gary Bishop and Norma Bishop, hus-
band and wife, Defendants–Counter-
claimants–Respondents,

and

Richard Ward and Kelly Ward, husband
and wife, Defendants–Respondents.

No. 24105.

Supreme Court of Idaho,
Lewiston, April 1999 Term.

Aug. 12, 1999.

Dennis K. Conley, Moscow, pro se appellant.

Landeck, Westberg, Judge & Graham, Moscow, for respondents. Ronald J. Landeck argued.

WALTERS, Justice.

This is an appeal following a remand and subsequent trial of Dennis Conley's claims to define the parameters of an easement conveyed to him in October 1980 by the grantors of his real property located on Moscow

Mountain in Latah County, Idaho. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The real property purchased by Conley was originally part of seventy-eight acres on the south side of Moscow Mountain owned by Lowell C. and Melissa A. Brown. By warranty deed dated October 24, 1980, the Browns conveyed twenty-five acres to Conley, including the grant of a right of way easement "for ingress and egress together with the right to construct, reconstruct, repair and maintain an existing road," which had been used for logging in the summers in the 1960's and 1970's. In October 1980, the road was primarily a grassy surface with two visible vehicle tracks of approximately twelve feet in width through its entire length except for two areas adjacent to the road where landings had been made to deck logs.

Conley admitted widening the road to some extent between 1980 and 1988. He acknowledged in-sloping the road and widening the entrance to the easement right of way from the county road with a forty-foot culvert. Conley graded the road on numerous occasions with a bulldozer, by cutting and filling, and at least once used a motor-grader, knocking trees over with his equipment. During the winter, Conley plowed snow from the road with his heavy equipment. Conley moved onto his property in November of 1986 and began using the existing road on a year-round basis to get to and from his residence. In 1987, Gary and Norma Bishop moved into their home on the property located near the entrance of the existing road from the county road.

Conley sought a declaration of his rights regarding the easement and filed a complaint for an injunction and for damages on November 3, 1988. The respondents answered and filed a counterclaim, after which a hearing was held which, pursuant to a stipulation by the parties, resulted in the entry of an Order and Injunction Pendente Lite. In another hearing held July 10, 1988, the parties entered into "a settlement in principle" on the court record, which was to govern the parties' actions with respect to Conley's right of way easement over the servient estates. The agreement was never fully executed, and the district court's efforts to compel execution of the agreement was the subject of an appeal wherein the Court of Appeals reversed the district court ordered settlement and remanded the matter for trial. *Conley v. Whittlesey*, 126 Idaho 630, 888 P.2d 804 (Ct. App.1995).

On October 16, 1995, that portion of the trial devoted to resolving the parameters of the easement began. Evidence regarding the intent of the parties at the time of the creation of the easement in 1980 was presented to the district court sitting as the trier of fact. Because neither party argued that the language of the easement was ambiguous, the district court determined that it would not consider the evidence of intent to explain the unambiguous easement. The district court thereafter entered an order limiting the easement's physical parameters as set forth in the joint engineering report (Defendants' Exhibit 27) and held that Conley had the right to use, repair and maintain, construct and reconstruct the easement within and not outside of the parameters therein set forth. The district court also permanently enjoined Conley from in any way using the easement by exceeding the physical parameters and from deviating from the road construction specifications set forth in the report. Further, the district court ordered Conley to surface the driving portion of the easement according to the specifications not later than November 15, 1996, or be enjoined from using the easement for vehicular ingress or egress until completion of such surfacing. Following a separate trial on the question of damages, the district court issued its memorandum decision and judgment denying Conley's request for damages and awarding damages to Craig Whittlesey and the Bishops, the owners of the servient land, for trespass and unauthorized tree cutting and for Conley's failure to repair and maintain the easement.

Conley filed a timely appeal from the district court's judgment. He filed an amended notice of appeal seeking to include review of the Order and Injunction Pendent Lite from November 1988, which were asserted by the

respondents in a motion to hold Conley in contempt in 1990, for removing trees and widening the road by cutting and filling to the detriment of the servient landowners.

Within one month of the entry of the judgment, the district court entered an order partially staying execution of the judgment. The stay was lifted by an order dated October 28, 1997, the effect of which was to add the costs of restoration of the road to the judgment amount in favor of the Bishops and Whittlesey. Finally, after numerous hearings on Conley's objections, the district court entered an order awarding attorney fees and costs to Whittlesey and the Bishops on June 28, 1998.

On appeal, Conley claims as error the restrictions as to the width and the use of the easement imposed by the district court, which he asserts were not delineated when the easement was created. He also contests the district court's order imposing upon him the costs of repair and restoration of the easement and the court's assessment of attorney fees and costs against him.

### ISSUES

Conley asserts the following issues on appeal:

1. Did the district court err in limiting the scope of Conley's easement to the physical parameters of the easement as set forth in the engineers' report?

2. Is the language of the easement ambiguous?

3. Did the district court err in finding that Conley, as the dominant tenement, had "a duty to maintain, repair and protect the easement" and thus was properly ordered to surface the road?

4. Did the district court err in finding that the respondents' improvements to the servient estate and the cedar tree on the Bishops' land did not constitute obstructions to the use of Conley's easement as they were not within the parameters of the easement?

5. Did the district court err in finding that Conley "may not be entitled to year-round use of the easement," where the grant places no such restrictions on the use of the easement?

6. Was it error for the district court to find that Conley had failed to maintain the road?

7. Did the closing of the easement by the district court effectuate a taking of Conley's property in violation of the constitution?

8. Was the district court's award of statutory interest on the damages from cutting the cedar tree and the other smaller seedling trees in error in that two different rates of interest were applied?

9. Was the district court's award of attorney fees based on a finding of frivolousness appropriate and within the discretion of the court?

10. Conley requests costs on appeal pursuant to I.C. § 12–107, § 12–123 and I.A.R. 40.

### STANDARD OF REVIEW

▇▇▇ Review of the lower court's decision is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law. *Alumet v. Bear Lake Grazing Co.*, 119 Idaho 946, 812 P.2d 253 (1991). A trial court's findings of fact in a court tried case will be liberally construed on appeal in favor of the judgment entered, in view of the trial court's role as trier of fact. *Lindgren v. Martin,* 130 Idaho 854, 857, 949 P.2d 1061, 1064 (1997); *Sun Valley Shamrock Resources, Inc. v. Travelers Leasing Corp.,* 118 Idaho 116, 118, 794 P.2d 1389, 1391 (1990). It is the province of the district judge acting as trier of fact to weigh conflicting evidence and testimony and to judge the credibility of the witnesses. *Abbott v. Nampa School District No. 131,* 119 Idaho 544, 808 P.2d 1289 (1991); I.R.C.P. 52(a). If the findings of fact are based on substantial evidence, even if the evidence is conflicting, they will not be overturned on appeal. *Hunter v. Shields,* 131 Idaho 148, 953 P.2d 588 (1998). However, we exercise free review over the lower court's conclusions of law to determine whether the court correctly stated the applicable law, and whether the legal conclusions are sustained by the facts found. *Burns v. Alderman,* 122

Idaho 749, 752–53, 838 P.2d 878, 881–82 (Ct. App.1992).

## DISCUSSION

### I.

We begin by noting that the question of ambiguity in the easement language was not asserted by either party below and was not ruled upon by the district court. Both Conley and the respondents affirmatively took the position before the district court that the easement language was not ambiguous. As a result, the question of ambiguity was not preserved for appellate review. We decline to consider for the first time on appeal whether the easement grant in this case is ambiguous. *See Schiewe v. Farwell*, 125 Idaho 46, 49, 867 P.2d 920, 923 (1993). We limit our review accordingly to the district court's decision fixing the scope of the easement and the rights and obligations of the parties with respect to the easement.

The grant of Conley's right of way easement for ingress and egress included "the right to construct, reconstruct, repair and maintain an existing road running over and across the North One–Half of the Northeast Quarter (N½ NE¼) of Section 26, Township 40 North, Range 5 West Boise Meridian, Latah County, State of Idaho." The granting language of Conley's easement, although it lacks precision in the measurement and location of the right of way, was particularized to the extent that the "existing road" was readily located and subsequently described in the engineers' report. The report was a collaborative effort by both parties' engineers in July of 1990 who produced road construction specifications for the existing road that would minimize further widening and destruction while providing for proper drainage and surfacing to allow adequate access for year round residential use. Relying on the engineers' report, the district court found the width of Conley's easement to be twelve feet, except at the turnouts.

### II.

Conley disputes the district court's finding and argues that because the easement was of unstated width in the deed of conveyance to him, he was entitled to more than the actual traveled surface of the road on which to exercise his right to construct, reconstruct, repair and maintain the easement. As a parallel, he points to the county highway district and forest road standards that require a right of way in excess of the traveled portion of the road. By virtue of the district court's finding limiting the easement to the traveled portion of the existing road, Conley maintains that he has been denied his secondary easement implicit in his right to construct.

A grant indefinite as to width and location must impose no greater burden than is necessary. *Coulsen v. Aberdeen–Springfield Canal Co.*, 47 Idaho 619, 628, 277 P. 542, 545 (1929). The question of whether a particular easement is reasonable and commensurate with the intention of the parties when the easement was granted is generally a question of fact for the trial court, and its findings will not be disturbed if supported by substantial and competent evidence. *Boydstun Beach Ass'n v. Allen*, 111 Idaho 370, 377, 723 P.2d 914, 921 (Ct.App.1986). The testimony at trial revealed that the easement was created in 1980, over an existing road which had been used for logging. The road consisted of two visible vehicle tracks of approximately twelve feet in width over a grassy surface, except for two areas adjacent to the road where landings had been made to deck logs. Conley was unable to show that his easement, which was a private right of way for ingress and egress, had to comply with minimum right of way standards applicable to county highways and forest service roads. The district court in fixing the parameters of the easement relied upon and adopted the road dimensions contained in the engineers' report. That finding, which we hold was supported by substantial, competent evidence, will not be disturbed on appeal.

### III.

Conley correctly describes the right granted to him "to construct, reconstruct, repair and maintain" as secondary

easements.[1] These secondary easements, however, cannot be used to enlarge the burden to the servient estate. *Abbott v. Nampa School District No. 131,* 119 Idaho at 549, 808 P.2d at 1294. The use of an easement may not be enlarged to the injury of the servient estate, *Village Condominium Ass'n, Inc. v. Idaho Power Co.,* 121 Idaho 986, 988, 829 P.2d 1335, 1337 (1992), although the easement owner has been held to be entitled to do such things as are reasonably necessary for the use of the easement. *Kolouch v. Kramer,* 120 Idaho 65, 69, 813 P.2d 876, 880. (1991). An easement such as Conley's claimed right of way, without any limitations as to its use, is one of unlimited *reasonable* use. *See Abbott, supra,* 119 Idaho at 548, 808 P.2d at 1293.

Conley acknowledges that an easement owner has a duty to maintain and repair his easement. He insists that his activities in grading the road, cutting and filling the banks and plowing in the winter time were conducted to facilitate full use of the easement and were within the rights conveyed as a part of his easement. Conley argues that the district court erred in ordering him to surface the road, imposing upon him an obligation not to protect the easement but to benefit the servient landowners at a great cost to him.

One acquiring an easement and right to travel over the lands of another not only assumes the burden of maintaining the right of way but all other burdens incident to the use. *Kirk v. Schultz,* 63 Idaho 278, 119 P.2d 266 (1941). *See Gibbens v. Weisshaupt,* 98 Idaho 633, 570 P.2d 870 (1977). The duty requires that the easement owner maintain the easement so as not to create an additional burden on the servient estate or an interference such as would damage the land, such as flooding of the servient estate. *Rehwalt v. American Falls Reservoir District No. 2,* 97 Idaho 634, 636, 550 P.2d 137, 139 (1976). The underlying question then is whether the district court's finding that Conley's use of the easement, specifically his grading and tree cutting activities, was unreasonable and foreclosed Conley's unauthorized expansion of the limits of the existing road.

The evidence at trial showed that Conley's actions had caused increased erosion, rutting on the surface of the road, sloughing of the hillsides along the road and siltation that had not previously been evident. Conley himself admitted not only to trimming overhanging branches and removing fallen trees but also to cutting trees down as he plowed snow away to allow easier and more convenient access for his vehicles. Based on the abundant evidence of Conley's unreasonable use of the easement, the district court held not only that Conley had failed to repair and maintain the road but also that Conley's road construction activities constituted a trespass and an expansion of the easement that resulted in significant damage to the servient estates. Because the district court's finding of unreasonableness is supported by substantial evidence in the record, we will not disturb the finding on appeal.

Notwithstanding Conley's argument that the order requiring him to surface the road was inequitable, we find that the district court's order properly sought to have Conley restore the easement by repairing the damage he had caused. The district court's decision, therefore, can be sustained on the facts found.

## IV.

Next, Conley contends that his full use of the easement was obstructed by a cedar tree located where the easement joined the county road and by the placement of logs, open-box culverts and ditches dug by

---

1. The term "secondary easement" is applied to the right to enter and repair and do those things necessary to the full enjoyment of the easement existing. *White Bros. & Crum Co., Ltd. v. Watson,* 64 Wash. 666, 117 P. 497, 499 (1911). Oftentimes an implied easement, a secondary easement is distinguishable from an additional servitude such as a change, alteration, or extension of the easement. *Id.* The right of secondary easements is not a right to change the mode of enjoyment, if such change increases the burden upon the servient estate. *Felsenthal v. Warring,* 40 Cal.App. 119, 180 P. 67, 71 (Ca. App.1919). Without the consent of the grantee of the servient tenement, an easement cannot be changed by the owner of the dominant tenement. *Id.*

the Bishops. He argues that his bulldozing and plowing activities were hampered thereby, thus increasing his maintenance burden on the easement. He also argues that the Bishops' installation of a well house, the stacking of logs, and the placement of planters and a new barn were too close to his easement, asserting that "there would be no reason to develop their property in such close proximity to the easement." Conley challenges the district court's findings that the respondents' efforts to minimize erosion on the road were not obstacles but gratuitous improvements to the easement and that the cedar tree, which Conley had removed, in no way impeded reasonable use of the easement.

 Where the grant of an easement is general in nature, the owner of the servient estate is entitled to use the estate in any manner not inconsistent with, or which does not materially interfere with, the use of the easement by the owner of the dominant estate. *Boydstun Beach Ass'n, supra,* 111 Idaho at 377, 723 P.2d at 921. An easement owner is entitled to relief upon a showing that he is obstructed from exercising privileges granted by the easement. *Id., citing Connecticut Light and Power Co. v. Holson Co.,* 185 Conn. 436, 440 A.2d 935 (1981). On this point, the Bishops testified that by digging ditches, placing logs across the road and installing gravel and open-box culverts, they were trying to contain washouts and control the significant erosion to their land that had not been present prior to Conley's use of the road. It was also clearly shown that the cedar tree was located thirty-five feet from the existing road and well outside of Conley's easement. Conley's testimony that the cedar tree blocked the access to the easement for his road grading equipment, although debatable, ignored the twelve-foot width of the easement enjoyed by Conley. The evidence, therefore, is sufficient to support the district court's findings. Accordingly, we find Conley's arguments claiming that his easement was obstructed to be without merit, and we uphold the district court's judgment imposing liability upon Conley for removal of the cedar tree.

## V.

 Conley challenges the district court's order enjoining him from using the easement for vehicular ingress and egress until surfacing of the driving portion of the easement was completed. He also maintains that by ordering him to surface the road, the district court improperly engrafted a limitation onto the use of the easement, which was not specified in the grant, and which the district court was without authority to order.

 An easement does not include the right to enlarge the use to the injury of the servient land. *Merrill v. Penrod,* 109 Idaho 46, 704 P.2d 950 (Ct.App.1985). The degree of change that will be allowed in the use of an easement differs with the manner in which the easement was conveyed, the language of the conveyance, and the use of the servient estate before and after the grant of the conveyance. *Abbott v. Nampa School Dist. No. 131, supra,* 119 Idaho at 548, 808 P.2d at 1293. Absent language in the easement to the contrary, the uses made by the servient and dominant owners, as a rule, may be adjusted consistent with the normal development of their respective lands. *Id., citing Boydstun Beach Ass'n, supra,* 111 Idaho at 378, 723 P.2d at 922.

There was testimony at trial that the road as it existed in 1980 was used primarily in the summer in good weather and that the entire length of the road, including steep areas, was driveable by car. There was also overwhelming evidence of the extent of damage that was caused by Conley's use of the easement during winter months and protracted periods of rain during other months. The district court found that the manner in which Conley used the easement, the times of the year he used it, and his failure to properly maintain the easement proximately caused substantial damage to the Bishops' pasture land by water and silt. These findings that are based upon substantial evidence can be readily sustained by this Court.

In its decision dated June 9, 1997, the district court further found from the condition of the road that damage to the easement would continue unabated until the improvements mandated by the district court's earli-

er decision were implemented.[2] This finding too is supported by substantial, competent evidence. Moreover, the injunction of which Conley complains was the district court's appropriate response to halt future damage to the road and to compensate the servient landowners for the damage to the easement occasioned by Conley's unreasonable use of the easement. The district court in its discretion was simply enforcing Conley's duty to maintain the easement. *See Rehwalt, supra.* We find therein no error.

## VI.

As a corollary to his argument that the district court improperly denied him the use of the easement, Conley argues that the closing of the easement resulted in a taking of his property without compensation. He contends that he was deprived of the use of his property through fraudulent means as part of a conspiracy made up of the servient landowners and the district court which repeatedly delayed ruling on matters in this case to Conley's detriment.

■■■■ The granting or refusal of an injunction is a matter resting largely in the trial court's discretion. *Savage Lateral Ditch Water Users Ass'n v. Pulley,* 125 Idaho 237, 869 P.2d 554 (1993); *Harriman v. Woodall,* 31 Idaho 750, 176 P. 565 (1918). The exercise of such discretion will not be reversed on appeal unless clear abuse is shown. *Milbert v. Carl Carbon, Inc.,* 89 Idaho 471, 406 P.2d 113 (1965). An injunction will not issue unless the party against whom relief is sought is violating, or threatens to violate, some right of the party seeking the remedy. *Brunzell v. Stevenson,* 30 Idaho 202, 164 P. 89 (1917).

As previously held, the existing evidence of damage that resulted from Conley's use of the easement was sufficient to authorize the issuance of the injunction to prevent Conley from further abusing his easement and requiring him to repair the damage he had done to the road. We concur in the district court's view of Conley's unreasonable use that led to the injunction and the award of damages to the respondents.[3] We find in the record no evidence of any conspiracy existing between the court and the respondents to obtain compensation either in the form of damages or interest on the judgment.

## VII.

■■ Conley asserts error in the district court's application of two different rates of interest on the trespass damages resulting from the cutting of the mature cedar tree and the immature trees. His main objection to the award, however, appears to be a claim that the district court delayed the case and that the amount of interest he has to pay is the result of court delay. Notwithstanding our earlier holding that Conley failed to establish any inordinate delay that contributed to the proceedings, we take this opportunity to clarify the basis of the district court's computation of damages, with which we find no error.

The district court assessed separate damage awards: (a) $17,874.86 for the cutting of the mature cedar tree which took place on October 10, 1986, and (b) $1,095.75 for the cutting of the immature trees on a date set by the district court, December 31, 1988, because the exact date, except for the year, was unknown. In the judgment, the district court applied a rate of interest of eighteen (18%) percent per year to the damages related to the trespass that occurred prior to 1987. That amount reflects the statutory rate prescribed in I.C. § 28–22–104(2). The statute was amended in 1987, chapter 278 of the sessions laws, section 7, pp. 571, 579, to provide for interest at the rate of five (5%)

---

2. In its July 9, 1996, order, the district court ordered that Conley resurface the road consistent with the specifications of the engineers' report; and that, if Conley repaired the road, he would not be prohibited from using the road year around. The district court's injunction of July 25, 1996, specifically enjoined Conley's ingress and egress until the surfacing was completed.

3. When Conley failed to surface the road by the date specified in the district court's order, the district court entered judgment in the amount of $25,000 representing the cost to restore the easement. The district court's judgment became final upon the lifting of the stay upon execution of the $25,000 amount by order dated October 28, 1997.

percent plus the base rate.[4] The second rate of interest of 10.875% per annum was applied to the damages that occurred in 1988, according to the statutorily-prescribed formula. We conclude that the district court correctly applied the law to determine the amount of interest that would be added to the judgment.

## VIII.

■ The district court after considering the factors set forth in I.C. § 12–121 and I.R.C.P. 54(d) and (e) determined that the respondents were entitled to an award of attorney fees in the amount of $68,373. The district court's award was premised upon its finding that Conley had brought and defended the case frivolously, unreasonably and without foundation. On appeal, Conley challenges the appropriateness of that finding and the ultimate award of fees.

■ An award under I.C. § 12–121 is discretionary; but it must be supported by findings and those findings, in turn, must be supported by the record. *Wing v. Amalgamated Sugar Co.*, 106 Idaho 905, 684 P.2d 307 (Ct.App.1984), *overruled on other grounds, NBC Leasing Co. v. R. & T Farms, Inc.*, 112 Idaho 500, 733 P.2d 721 (1987). When an exercise of discretion is involved, an appellate court conducts a three-step analysis: (1) whether the trial court properly perceived the issue as one of discretion; (2) whether the court acted within the boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by the exercise of reason. *Savage Lateral Ditch Water Users Ass'n v. Pulley, supra.* Here, the district court recited at length and in great detail its reasons for awarding costs and attorney fees to the respondents. The record in this case shows that Conley maintained throughout that the easement accorded him *carte blanche* to make such changes in the existing road as he saw fit. The district court concluded that

Conley's position was so plainly fallacious and violative of the rights of the servient landowners that an award of fees to the respondents as the prevailing parties in the action was justified. Because Conley has failed to demonstrate an abuse of discretion, we uphold the district court's award of attorney fees and costs to the respondents.

## CONCLUSION

The district court's findings determining the parameters and the scope of the easement are based on substantial, albeit conflicting evidence. The conclusions supported by the findings and reached by application of the facts to the law are affirmed, including the damage award and the injunctive relief prohibiting future use of the easement until completion of the surfacing ordered by the district court.

■ Attorney fees on appeal will only be awarded when the court is left with the abiding belief that the appeal was brought, pursued, defended frivolously, unreasonably or without foundation. *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 591 P.2d 1078 (1979). Under the circumstances, we do not award attorney fees in this appeal. Costs are awarded to the respondents as the prevailing party.

Chief Justice TROUT, Justices SILAK and SCHROEDER, concur.

Justice KIDWELL dissents as to part VIII, without opinion, and otherwise concurs in the remainder of the decision.

---

4. The base rate shall be determined on July 1 of each year by the Idaho state treasurer and shall be the weekly average yield on United States treasury securities as adjusted to a constant maturity of one (1) year and rounded up to the nearest one-eighth percent (1/8%). The base rate shall be determined by the Idaho state treasurer utilizing the published interest rates during the week preceding July 1 of the year in which such interest is being calculated. The announced base rate shall apply to all such judgments during the succeeding twelve (12) months.