20 P.3d 702

**NAMPA & MERIDIAN IRRIGATION DISTRICT, Plaintiff–Appellant–Cross Respondent,**

v.

**WASHINGTON FEDERAL SAVINGS, Defendant–Respondent–Cross Appellant.**

No. 25719.

Supreme Court of Idaho, Boise, December 2000 Term.

March 13, 2001.

Ringert, Clark Chtd., Boise, for appellant. James G. Reid argued.

Davison, Copple, Copple, Copple & Ludwig, Boise, for respondent. Terry C. Copple argued.

WALTERS, Justice.

Nampa & Meridian Irrigation District (NMID) appeals the district court's decision denying an injunction to prohibit Washington Federal Savings (Washington Federal) from constructing a sidewalk and fence on property over which NMID has an easement for the purpose of operating, maintaining, and repairing an irrigation lateral. We affirm the decision.

## FACTUAL AND PROCEDURAL BACKGROUND

NMID delivers water from the Boise River for irrigation by its landowners through a series of canals, laterals, and drains. One of the laterals NMID operates and maintains is the Finch Lateral, which delivers water from the Ridenbaugh Canal to NMID's landowners. The Finch Lateral is approximately seven miles long and at one point traverses property owned by Washington Federal to the north of Fairview Avenue and to the east of Hampton Road in Boise. As it traverses the Washington Federal property, the lateral flows from east to west parallel to Fairview Avenue, which runs along its southern edge.

NMID's easement stems from a document entitled "Channel Change Easement" (CCE or document) executed on August 7, 1958, by the prior owners of Washington Federal's property. The CCE, along with width and depth requirements for the lateral itself, granted a forty-foot easement to NMID for the lateral's maintenance, as well as an easement to the State of Idaho for the lateral's construction. In addition, the document provides for a bank and berm five feet wide and one-foot deep on the south (Fairview Avenue) side of the lateral. There is to be no bank or berm on the north (Washington Federal) side of the canal.

In May and June of 1998, Washington Federal constructed a sidewalk on the north side of the Finch Lateral within NMID's easement. The construction of the sidewalk began after Washington Federal applied to Ada County to subdivide the property adjacent to the Fairview Avenue branch. The Ada County Highway District required Washington Federal either to tile the Finch Lateral or to construct a sidewalk and fence before approval to subdivide would be given. NMID objected to the sidewalk's construction, arguing that it would make it impossible for NMID to operate and maintain the lateral. This suit followed with NMID seeking to enjoin Washington Federal from completing the construction of the sidewalk and fence.

The district court found that NMID's easement was contractual in nature, rather than a safety or exclusive easement, and that Washington Federal was entitled to use the land subject to the easement for any purposes not inconsistent with the rights of NMID. At trial, NMID produced no records showing maintenance or repair conducted on its canals or laterals. In addition, NMID offered no testimony that it had conducted any repairs or maintenance on this portion of the Finch Lateral. Because NMID failed to show that the sidewalk and proposed fence would unreasonably interfere with its easement, the district court denied NMID's injunction, holding that Washington Federal was entitled to construct the sidewalk and fence. After the court's decision regarding the injunction, Washington Federal petitioned for an award of costs and attorney fees. A hearing was held on the issue, and the district court awarded costs to Washington Federal. The district court did not award either attorney fees or the discretionary costs requested by Washington Federal. A final judgment was then entered.

### ISSUES

NMID presents two issues on appeal. First, it challenges the district court's ruling that the sidewalk and proposed fence do not unreasonably interfere with NMID's access to and operation, maintenance, and repair of the Finch Lateral. Second, it questions the district court's refusal to allow NMID to present evidence establishing that the sidewalk presents a danger to the public. Washington Federal cross-appeals, challenging the district court's decision denying discretionary costs and attorney fees.

### DISCUSSION

#### A. Interference With NMID's Easement

#### 1. Standard of Review

Appellate review of the district court's decision is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law. *See Conley v. Whittlesey,* 133 Idaho 265, 269, 985 P.2d 1127, 1131 (1999); *Alumet v. Bear Lake Grazing Co.,* 119 Idaho 946, 812 P.2d 253 (1991). A district court's findings of fact in a bench trial will be liberally construed on appeal in favor of the judgment entered, in view of the district court's role as trier of fact. *See Lindgren v. Martin,* 130 Idaho 854, 857, 949 P.2d 1061, 1064 (1997); *Sun Valley Shamrock Resources, Inc. v. Travelers Leasing Corp.,* 118 Idaho 116, 118, 794 P.2d 1389, 1391 (1990). It is the province of the district judge acting as trier of fact to weigh conflicting evidence and testimony and to judge the credibility of the witnesses. *See* I.R.C.P. Rule 52(a); *Marshall v. Blair,* 130 Idaho 675, 679, 946 P.2d 975, 979 (1997). We will not substitute our view of the facts for the view of the district court. *Marshall,* 130 Idaho at 679, 946 P.2d at 979; *Deer Creek, Inc. v. Hibbard,* 94 Idaho 533, 535, 493 P.2d 392, 394 (1972). Instead, where findings of fact are based on substantial evidence, even if the evidence is conflicting, those findings will not be overturned on appeal. *See Hunter v. Shields,* 131 Idaho 148, 953 P.2d 588 (1998). We exercise free review over the lower court's conclusions of law, however, to determine whether the court correctly stated the applicable law, and whether the legal conclusions are sustained by the facts found. *See Conley,* 133 Idaho at 269, 985 P.2d at 1131. With this standard in mind, we turn to whether the district court erred in concluding that the sidewalk and proposed fence did not unreasonably interfere with NMID's easement.

### 2. Relationship Between I.C. § 42–1102 and the Channel Change Easement

■ A threshold question in this case is whether the parties' rights and obligations are defined by the CCE or by I.C. § 42–1102. The CCE provides for "[a]n easement and right of way . . . to Nampa and Meridian Irrigation District to operate, maintain and repair said ditch and channel and to use the same for the transmission of irrigation water and drain water." Idaho Code section 42–1102, on the other hand, provides that an owner or claimant of land has the right to

> enter the land across which the right-of-way extends, for the purposes of cleaning, maintaining and repairing the ditch, canal or conduit, and to occupy such width of the land along the banks of the ditch, canal or conduit as is necessary to properly do the work of cleaning, maintaining and repairing the ditch, canal or conduit with personnel and with such equipment as is commonly used, or is reasonably adapted, to that work.

NMID asserts that the CCE is immaterial to the scope and nature of the easement, which it asserts is defined solely by I.C. § 42–1102. Washington Federal, on the other hand, asserts that the trial court properly concluded that NMID has a contractual easement under the CCE.

■ We conclude that neither the provisions expressed in the CCE executed in 1958 nor the quoted language of the statute enacted in 1996 operate to create a greater right in NMID to the exclusion of the other. The owner of the servient estate is entitled to make uses of the property that do not unreasonably interfere with the dominant estate owner's enjoyment of the easement. See *Carson v. Elliott*, 111 Idaho 889, 890, 728 P.2d 778, 779 (Ct.App.1986); *Boydstun Beach Ass'n v. Allen*, 111 Idaho 370, 377, 723 P.2d 914, 921 (Ct.App.1986). An additional restriction placed upon the property by the CCE requires that "there be no bank nor berm along the northerly side of such ditch and channel." NMID argues that the district court erred by concluding that the CCE prevents it from maintaining the lateral from the north (Washington Federal) side because the debris from the maintenance would create a berm or bank unless NMID removed it. This presupposes both that NMID would not take away any debris it removed from the lateral, and that the district court's decision rested solely on the additional CCE restriction. In fact, as discussed below, there is evidence suggesting that NMID would infrequently, if ever, have to remove enough silt or other debris to create a bank along either side of the lateral. Additionally, the district court's decision is supported by other evidence suggesting that requiring NMID to maintain the lateral from the south (Fairview Avenue) side does not unreasonably interfere with its rights under the easement—whether those rights arise from the CCE or I.C. § 42–1102.

### 3. Interference With NMID's Easement

■ The law is well settled with respect to the correlative rights of dominant and servient owners of easements. The owner of the servient estate is entitled to use the estate in any manner not inconsistent with, or which does not materially interfere with, the use of the easement by the owner of the dominant estate. See *Boydstun Beach Ass'n* 111 Idaho at 377, 723 P.2d at 921. In other words, the servient estate owner is entitled to make uses of the property that do not unreasonably interfere with the dominant estate owner's enjoyment of the easement. See *Carson v. Elliott*, 111 Idaho 889, 890, 728 P.2d 778, 779 (Ct.App.1986). Thus, an easement owner is entitled to relief upon a showing that he is obstructed from exercising privileges granted in the easement. See *Boydstun Beach*, 111 Idaho at 377, 723 P.2d at 921 (citations omitted).

■ NMID argues that the building of the sidewalk and fence interferes with its rights by obstructing its use of the Finch Lateral easement. NMID contends that testimony at trial supports its argument that Washington Federal's sidewalk and proposed fence would increase the difficulty of maintaining and repairing the lateral. In essence, NMID's concern is that the sidewalk and proposed fence will render difficult, if not impossible, NMID's use of heavy equipment to clean or repair the lateral from the north (Washington Federal) side of the canal.

NMID, however, produced no records or evidence of any maintenance or repairs performed on the Finch Lateral such as the removal of accumulated silt or debris that would require the use of backhoes, caterpillars, or other heavy equipment. In contrast, Washington Federal produced evidence that the only maintenance performed on the Finch Lateral consisted of burning weeds along the lateral's bank. This testimony indicated that NMID had only burned the weeds four or five times in approximately twenty years, and had done so with a pickup truck equipped with a propane tank. While past use does not necessarily mean that NMID will never employ heavy equipment to clean or repair the lateral, it does suggest that NMID's activity will be so infrequent that its easement rights will not be unreasonably interfered with.

NMID also asserts that the district court improperly concluded that it could maintain the lateral from the south (Fairview Avenue) side. NMID contends that maintenance from the south side would be dangerous and difficult and would require permission by the Ada County Highway District because it would involve closure of a lane of traffic on Fairview Avenue. In support of its argument, NMID produced expert testimony from John Anderson and Paul Deveau, who are responsible for the maintenance and repair of many miles of ditches and canals for their respective irrigation districts. Both of these individuals concluded that the Finch Lateral should be maintained from the Washington Federal side. Washington Federal, on the other hand, presented evidence from Jack Straubhar, a civil engineer, who testified that cleaning the Finch Lateral would be more difficult from the Washington Federal side, even without the sidewalk. NMID asserts that the Court should disregard Mr. Straubhar's testimony because he is a civil engineer, and not a heavy equipment operator. It is the province of the district judge, however, acting as trier of fact

to determine the credibility of the witnesses. *See* I.R.C.P. Rule 52(a); *Marshall*, 130 Idaho at 679, 946 P.2d at 979. Thus, this Court will not substitute its judgment for that of the trial judge regarding the weight assigned to Mr. Straubhar's testimony. Accordingly, because the district court's decision is supported by substantial, albeit conflicting, evidence, we uphold the district court's decision. *See Hunter v. Shields*, 131 Idaho 148, 953 P.2d 588 (1998).[1]

## B. Evidence of Public Danger

### 1. Standard of Review

The Court reviews trial court decisions admitting or excluding evidence under an abuse of discretion standard. *See Morris v. Thomson*, 130 Idaho 138, 144, 937 P.2d 1212, 1218 (1997). In determining whether the trial court has abused its discretion, the Court applies the three-factor test articulated in *Sun Valley Shopping Center, Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). The three factors are: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *See id.* at 94, 803 P.2d at 1000.

### 2. Trial Court's Exclusion

NMID sought to introduce evidence establishing that the sidewalk and proposed fence on Washington Federal's side of the lateral presented a danger to the public. NMID first argues that the district court's decision to exclude evidence regarding the dangers posed by the sidewalk was a legal conclusion rather than an evidentiary ruling. The district court, however, noting that I.C. § 42–1102 does not provide for the exercise of safety practices as an incident to easements for irrigation laterals, concluded that

1. In addition, it should be noted that several provisions in the Idaho Code give NMID a statutory right to use Fairview Avenue to maintain the canal. Idaho Code section 42–3212(k) provides that an irrigation district can "construct and maintain works and establish and maintain facilities across or along any public street or highway" and Idaho Code section 43–907 grants to irrigation districts a right-of-way over state lands to "locate, construct and maintain [its] works...."

evidence of NMID's safety concerns was not relevant to the question of whether the sidewalk and proposed fence inferred with NMID's use of the easement. This suggests that the district court was making an evidentiary ruling. Specifically, the court stated: "The concern I have is relevance. I don't see the statute giving an easement to keep people away from the ditch." This also illustrates that the district court understood that it had the discretion to admit or deny the evidence. Thus, the question before the Court is whether the trial court acted within the boundaries of its discretion and consistently with the applicable legal standards, and whether the trial court reached its decision through an exercise of reason. We hold that it did.

NMID argues that district court erred by refusing to allow evidence regarding safety concerns, pointing to the decisions of other states that have found the exercise of safety practices incident to the easement enjoyed by the dominant owner. NMID analogizes the Finch Lateral situation to cases involving electrical transmission lines in which the courts have generally held that encroachments on easements are inconsistent with the easement because of the increased dangers the encroachments impose. NMID contends that this section of the Finch Lateral is particularly dangerous to the public, and becomes even more so with the construction of the sidewalk. Because the sidewalk is a safety hazard, NMID asserts, it is inconsistent with the purposes of the easement.

The provisions of the CCE granting the easement to NMID do not include any expressed terms relating to concern for safety, or the avoidance of danger. Accordingly, there is no contractual basis for consideration by the district court of the evidence offered by NMID.

Furthermore, it should be noted that I.C. § 42–1102 only contemplates a right-of-way for cleaning, maintaining, and repairing canals. The statute provides notice to owners of land that the owner of the ditch or canal has the right-of-way, and serves to clarify what the right-of-way includes. *See* 1996 Idaho Sess. Laws, ch. 187, p. 594. This Court in the past has commented upon the

necessity and importance of the canal system in Idaho. *See Kunz v. Utah Power & Light Co.*, 117 Idaho 901, 904, 792 P.2d 926, 929 (1990) ("Idaho's extensive agricultural economy would not exist but for the vast systems of irrigation canals and ditches which artificially deliver stored or naturally flowing water from Idaho's rivers and streams into abundant fields of growing crops."). Idaho Code section 42–1102 thus provides a means for entities like NMID to maintain their canals such that they may properly deliver and drain the water that forms the agricultural lifeblood of this state. Missing from the statute is any suggestion that owners of the right-of-way may, in cleaning, maintaining, or repairing the canal or ditch, restrict the servient landowner's use of the right-of-way because of safety concerns. It is not the province of the Court to read desirable protections into a statute that simply are not there as a matter of legislative prerogative.

In sum, there was no contractual or statutory requirement that the district court consider safety issues. Accordingly, the Court holds that the district court's exclusion of the safety evidence was both within its discretion and the applicable standards before it, and was exercised with reason.

## C. Attorney Fees and Discretionary Costs

### 1. Attorney Fees

 Washington Federal asserts that the district court improperly denied its request for attorney fees pursuant to I.C. § 12–121 because NMID pursued its claim frivolously and without merit. This Court has held that an award of attorney fees under I.C. § 12–121 is not a matter of right, and is appropriate only when the Court, in its discretion, "is left with the abiding belief that the action was pursued, defended, or brought frivolously, unreasonably, or without foundation." *Owner–Operator Ind. Drivers Assoc. v. Idaho Public Util. Comm'n*, 125 Idaho 401, 408, 871 P.2d 818, 825 (1994). When deciding whether the case was brought or defended frivolously, unreasonably, or without foundation, the entire course of the litigation must be taken into account. Thus, if there is a legitimate, triable issue of fact, attorney

fees may not be awarded under I.C. § 12–121 even though the losing party has asserted factual or legal claims that are frivolous, unreasonable, or without foundation. *See Turner v. Willis,* 119 Idaho 1023, 812 P.2d 737 (1991). The award of attorney fees rests in the sound discretion of the trial court and the burden is on the person disputing the award to show an abuse of discretion. *See Anderson v. Ethington,* 103 Idaho 658, 651 P.2d 923 (1982). In determining whether the trial court has abused its discretion, we again turn to the three-factor test articulated in *Sun Valley Shopping Center, Inc. v. Idaho Power Co.,* 119 Idaho at 94, 803 P.2d at 1000.

 Here, the district court expressly recognized in its order awarding costs that it had the discretion to award fees. The court additionally noted that although NMID asserted several factual issues that were without foundation, there remained triable issues of fact concerning the effect Washington Federal's sidewalk and proposed fence on NMID's use of the easement. Washington Federal presents no evidence that the district court's decision was not reached by the exercise of reason. Accordingly, this Court upholds the district court's decision denying attorney fees at trial. For the same reason, we decline to award attorney fees on appeal.

### 2. Discretionary Costs

Washington Federal argues that under IRCP 54(d)(1)(D) it should be awarded discretionary costs. Under IRCP 54(d)(1)(D), costs not awarded as a matter of right "may be allowed upon a showing that said costs were necessary and exceptional costs reasonably incurred, and should in the interest of justice be assessed against the adverse party." The district court, when ruling on whether such costs should be awarded, is instructed to make express findings as to why each specified item should not be allowed. *See* IRCP 54(d)(1)(D). The district court's decision is reviewed under the abuse of discretion standard outlined above. *See Sun Valley Shopping Center,* 119 Idaho at 94, 803 P.2d at 1000.

Here the district court's order clearly illustrates that it was aware that it had the discretion to award or deny the discretionary costs. The court made express findings for each of the requested discretionary costs submitted by Washington Federal as required by the statute and ultimately concluded that none of the requested costs was "exceptional." Once again, Washington Federal presents no evidence that the district court's decision was not reached by the exercise of reason. Therefore, we uphold the district court's decision denying discretionary costs to Washington Federal.

### CONCLUSION

For the above reasons, the Court affirms the district court's judgment in favor of Washington Federal. Costs, but not attorney fees, are awarded to the respondent pursuant to Idaho Appellate Rule 40.

SCHROEDER, KIDWELL, JJ., and HERNDON and SHINDURLING, pro tem JJ., concur.