82 P.3d 833

Paul J. McGREW, Plaintiff–Respondent,

v.

Melodee Morgan McGREW, Defendant–Appellant.

No. 28578.

Supreme Court of Idaho, Boise, December 2003 Term.

Dec. 23, 2003.

Cooper, Wetzel, Avery & Lee, Idaho Falls, for appellant. Royce B. Lee argued.

Belnap & Curtis, PLLC, Boise, for respondent. Robert J. Williams argued.

EISMANN, Justice.

This is an appeal from orders denying motions to set aside the award of retirement benefits by a divorce decree on the ground that the decree is void, to enter a qualified domestic relations order with respect to the retirement benefits, and to correct child support records maintained by the Department of Health and Welfare. The appeal also challenges the award of attorney fees under Idaho Code § 12–121 by the magistrate and district judges. We affirm the orders denying relief from a void judgment and refusing to correct the Department's records, we vacate the order regarding the qualified domestic relations order, and we reverse the orders awarding attorney fees.

## I. FACTS AND PROCEDURAL HISTORY

On January 23, 1976, the appellant Melodee Morgan McGrew (Melodee) and respondent Paul J. McGrew (Paul) were married. On June 19, 1998, Paul filed this action seeking a divorce on the ground of irreconcilable differences; joint legal custody of the parties' five children, with Melodee being the primary physical custodian and Paul having specified period of physical custody; child support determined in accordance with the Idaho Child Support Guidelines; and division of the parties' property and debts as specified in the complaint. On July 31, 1998, Melodee filed an answer and counterclaim in which she sought a divorce on the grounds of extreme cruelty and irreconcilable differences; sole legal and physical custody of the parties' five children; child support in accordance with the Idaho Child Support Guidelines; spousal support; and the division of the parties' property and debts. Paul filed a reply to the counterclaim, and the case was set for pretrial conference and court trial.

On September 30, 1998, the date set for the pretrial conference, the parties appeared in court with their respective counsel, who stated that the case was resolved. Paul's attorney Alan J. Coffel stated that he had drafted a proposed divorce decree, but needed to make some changes in it. He stated he would prepare the final decree, fax it to the defendant, and "we'll both sign off on it." He then summarized the parties' agreement regarding child custody and visitation, child support, allocation of the dependency exemptions for the children, and provision of medical insurance coverage for the children. Melodee's attorney Joanne M. Buchin added that child support would commence on November 1, 1998, so long as Paul paid certain bills regarding the residence in which Melodee resided and that the parties would share equally the children's uncovered medical expenses. The division of a few items of personal property, including certain paintings, and the awarding of the community residence and a cabin were also discussed. At the conclusion of the hearing, the magistrate judge stated, "All right. Well, then, I'll look

forward to seeing the stipulated decree of divorce and I'll execute it upon presentation."

Mr. Coffel prepared a proposed decree, which both he and Paul signed as having read and approved. He apparently sent the proposed decree to Ms. Buchin, but she did not respond in any way. At some point in time, Mr. Coffel sent the proposed decree to the court without the signatures of either Melodee or her attorney Ms. Buchin. After waiting some time for Ms. Buchin to indicate that Melodee agreed to the proposed decree, the magistrate judge executed the decree upon the assumption that Melodee's lack of objection constituted agreement to it. The clerk of the court entered the decree on December 23, 1998.

On April 1, 1999, Melodee appeared in court pro se pursuant to an order to show cause seeking to have her held in contempt for her failure to comply with the property division provisions in the divorce decree. Paul had been awarded a cabin in the divorce decree, and she had previously failed to sign a deed conveying her interest in the cabin to him. During the hearing, she agreed to sign a deed conveying her interest in that cabin to Paul. Paul's attorney questioned her about two paintings that had been awarded to Paul in the divorce decree. She responded that Paul had agreed before the decree was entered that she could have one of the paintings. Paul's attorney also asked her about her failure to pay, as ordered in the divorce decree, $215.00 per month as one-half of the payment due under their Chapter 13 bankruptcy plan. She again responded that she did not believe she had to make that payment because of an out-of-court agreement with Paul. When asked whether she had received a copy of the divorce decree, she answered that her attorney did not give her a copy of the decree until the week preceding the contempt hearing. She testified that during the week preceding the contempt hearing, she had gone to Ms. Buchin's office seeking representation in the contempt proceedings, and Ms. Buchin declined to represent her. Ms. Buchin did, for the first time, provide Melodee with a copy of the divorce decree. There is nothing in the record indi-

cating if or when the clerk of the court mailed a copy of the decree to Ms. Buchin.

Mr. Coffel asked Melodee if the terms of the divorce decree were the terms to which she had agreed, and she responded that the terms to which she had agreed included the promises that Paul had made to her. The magistrate judge then noted that the original stipulated decree signed by Paul and Mr. Coffel had been submitted to the court, that the court waited a long time but Ms. Buchin did not sign the stipulation, and that the court then executed the decree.

At the conclusion of the contempt hearing, the magistrate judge stated that he would not find Melodee in contempt because he did not believe she knew about some of the terms and conditions of the divorce decree where her attorney did not serve her with a copy of it until the week preceding the contempt hearing. The magistrate ordered her, however, to comply with the terms and conditions of the decree in the future. The magistrate advised her, "Until the decree is modified—and you're certainly welcome to file a motion to modify the decree—you're bound by the Court's orders."

On May 27, 1999, the parties' respective counsel appeared in court for a hearing on Paul's motion for partial satisfaction of judgment regarding child support payments. At this hearing, Melodee was represented by Dennis C. Weigt. Counsel for the parties stipulated that Paul should be given credit for payment of child support in the total sum of $8,484.00. The magistrate judge signed an order to that effect the same day.

On December 7, 1999, Paul, who was now represented by Robert J. Williams, filed a petition seeking: (1) modification of the divorce decree to transfer physical custody of three children to him and to require Melodee to pay child support; (2) an order holding Melodee in contempt for failing to make bankruptcy payments ordered in the divorce decree, for failing to give Paul possession of a painting he had been awarded in the divorce decree, and for failing to comply with the visitation schedule set forth in the divorce decree; and (3) a judgment against Melodee for the total of the bankruptcy payments that she did not make as ordered in

the decree and that Paul ultimately made. In response, on January 5, 2000, Melodee, who was now represented by John O. Avery, filed a petition seeking: (1) modification of the divorce decree to transfer to her physical custody of the child whose physical custody the decree had awarded to Paul, and a corresponding modification of child support; (2) a judgment against Paul for the portion of the children's medical and child care expenses that he has not paid as ordered in the divorce decree; and (3) an order finding Paul in contempt for failing to comply with the visitation schedule ordered in the divorce decree and for failing to give Melodee possession of piano rolls that she was awarded in the decree.

During the marriage of the parties, Paul was employed by a railroad. His railroad retirement, insofar as is relevant here, had two components: Tier I, which is not divisible upon divorce, and Tier II, which is divisible upon divorce. In addition, there is a divorced spouse annuity that a divorced spouse of a railroad employee can receive at age 62 under certain conditions, including that the divorced spouse is not currently married. The divorce decree awarded Paul "Railroad retirement," and it awarded Melodee "Her share of spousal retirement from railroad pursuant to guidelines." On January 14, 2000, Melodee filed a motion seeking entry of a qualified domestic relations order providing that upon Paul's retirement, Melodee is entitled to receive one-half of the Tier II benefits attributable to the parties' marriage.

On July 31, 2000, pursuant to the parties' stipulation, the magistrate judge issued an order awarding Melodee the primary physical custody of the parties' four, unemancipated minor children, setting forth a schedule of visitation, modifying child support and providing for the division of the children's health care and child care expenses, and dismissing the contempt proceedings.

On August 24, 2000, the magistrate judge issued an order denying Melodee's motion seeking entry of a qualified domestic relations order regarding Paul's Tier II benefits under his railroad retirement. The magistrate ruled that under the divorce decree,

"Melodee was to receive her share and only her share of spousal retirement from the railroad pursuant to the guidelines," and that her motion was untimely pursuant to either Rule 59(e) or 60(b) of the Idaho Rules of Civil Procedure.

On August 30, 2000, Melodee moved for reconsideration of the order, and on February 9, 2001, she moved for relief from the order under Rule 60(b) of the Idaho Rules of Civil Procedure. She also requested, pursuant to Rule 60(b)(1) & (6), that the magistrate judge "reopen evidence with respect to determining a fair and equitable valuation of the community property of the parties for the purpose of resolving the ambiguity of the retirement issue only." She also stated in her motion that the magistrate judge's mistaken belief that the parties had stipulated to the decree justified "relief from any res judicata effect of its Orders and Decrees of August 25, 2000 and of December 22, 1998." On February 13, 2001, she filed an amended motion seeking relief from the order based upon Rule 60(b) and relief from that portion of the divorce decree awarding the railroad retirement on the ground that it was voidable under Rule 60(b)(4) because it was entered without her default, agreement, or a hearing.

On February 9, 2001, Melodee filed a motion seeking an order requiring the Department of Health and Welfare to correct its child support payment records maintained in connection with this case. When the parties appeared in court on September 30, 1998, they stipulated that child support would commence on November 1, 1998. The divorce decree signed by the magistrate judge had child support commencing on December 1, 1998. Melodee contended that the partial satisfaction of judgment entered on May 27, 1999, in the sum of $8,484.00 was erroneously construed by the Department as applying to the child support payments due under the decree, when the sum actually included child support payments made by Paul in October and November prior to entry of the decree. She also contended that the satisfaction of judgment included the payment made on April 5, 1998, through the Department, and that the Department in its records counted that payment as being in addition to the

payments included in the partial satisfaction of judgment.

On March 13, 2001, the magistrate judge issued an order denying all of Melodee's motions. It concluded that her motions under Rule 60(b) were untimely, that the decree was not void, and that there was no basis for awarding relief under either Rule 59(a) or 60(a). On March 20, 2001, Paul filed a memorandum of costs seeking an award of attorney fees under Idaho Code § 12–121. On April 19, 2001, Melodee filed a notice of appeal to the district court, and on May 29, 2001, the magistrate judge issued an order awarding Paul attorney fees in the sum of $1,314.00 pursuant to Idaho Code § 12–121. On April 19, 2002, the district court affirmed the decisions of the magistrate judge and ordered that Paul be awarded attorney fees on appeal pursuant to Idaho Code § 12–121. Melodee then timely appealed to this Court.

## II. ISSUES ON APPEAL

A. Did the magistrate judge err in denying Melodee's motion, pursuant to Rule 60(b)(4) of the Idaho Rules of Civil Procedure, to set aside that portion of the decree awarding the railroad retirement on the ground that it was void?

B. Did the magistrate judge err in denying Melodee's motion for an order dividing the Tier II component of Paul's railroad retirement benefits?

C. Did the magistrate judge err in denying Melodee's motion to correct the child support records of the Department of Health and Welfare?

D. Did the magistrate judge err in awarding attorney fees to Paul pursuant to Idaho Code § 12–121?

E. Did the district judge err in awarding attorney fees on appeal to Paul pursuant to Idaho Code § 12–121?

F. Should either party be awarded attorney fees on this appeal pursuant to Idaho Code § 12–121?

## III. ANALYSIS

■ When reviewing a case decided in the magistrate division that has been appealed to the district court, we review the magistrate's decision independently of, but with due regard for, the district court's intermediate appellate decision. *Brinkmeyer v. Brinkmeyer,* 135 Idaho 596, 21 P.3d 918 (2001).

**A. Did the Magistrate Judge Err in Denying Melodee's Motion, Pursuant to Rule 60(b)(4) of the Idaho Rules of Civil Procedure, to Set Aside that Portion of the Decree Awarding the Railroad Retirement on the Ground that It Was Void?**

■ On February 13, 2001, Melodee filed a motion seeking relief from that portion of the divorce decree awarding the railroad retirement on the ground that it was void under Rule 60(b)(4) because it was entered without her default, agreement, or a hearing. When the parties appeared with their counsel in court on September 30, 1998, their counsel both stated that the case had been resolved. The magistrate judge asked how it had been resolved, and Paul's counsel Mr. Coffel stated that he had prepared a proposed decree, but there were some items that needed to be changed as a result of counsels' discussions. He then said that he would state the agreement on the record.

The agreement, as stated by Mr. Coffel, was as follows. Melodee was to have primary physical custody of four children, and Paul was to have primary physical custody of one child. With respect to child custody issues, the parties had a signed mediation agreement that would be incorporated into the decree. Child support and day care would be determined according to the Idaho Child Support Guidelines. Paul would receive the income tax exemptions for either four or five of the children and he would provide full medical insurance coverage for each child until he or she was nineteen years of age. He also stated that the fireplace screen and two matching sleeping bags listed in the complaint as going to Paul would be awarded to Melodee. Melodee's counsel Ms. Buchin then added that child support would commence on November 1, 1998, if Paul paid the October bills, including both mortgage payments, for the residence in which Melodee was living and that any health care costs

for the children that were not covered by insurance would be shared equally by the parties.

The magistrate judge asked if the parties were also going to stipulate to residency, the jurisdiction of the court, and irreconcilable differences, and both counsel answered that they were. The magistrate judge then stated, "And the decree will come before the Court after you've had a chance to review it and sign it, counsel?" Both counsel responded in the affirmative. The magistrate judge asked Paul if there were any other representations that needed to be disclosed to the court, and Paul answered that there were not. The magistrate asked Paul, "And you agree that upon presentation of the proposed decree with your counsel's signature on it that I can execute the judgment?", to which Paul answered, "Yes."

The magistrate judge then asked Melodee if there were any things that needed to be added that had not been placed on the record. She responded that they were just going to divide up the paintings. Paul interjected that he had relented on the fireplace screen, and the magistrate stated that they could discuss that after court when they were not on the record. Melodee attempted to bring up the issue of the paintings, and the magistrate told her not to interrupt and that they could discuss the matter after court. The magistrate added, "If there's still need for trial over some certain property issues, let me know and I'll be happy to leave the matter set. Otherwise, I'll expect a decree to come in in stipulated form.".

Mr. Coffel stated that his proposed decree may be missing some pages regarding property division, and both counsel had some discussions off the record. The magistrate judge then said, "What I want to be sure have happen in this case is I want both parties' signatures on this stipulated decree of divorce also." Both counsel agreed, and Mr. Coffel then added that Melodee was being awarded the house, subject to the first and second mortgages. Melodee interjected that Paul was receiving "the paid-off cabin" and the guns. Mr. Coffel stated that they would "divide it pursuant to the Uniform Property Schedules," and the magistrate

judge ended the session by stating, "All right. Well, then, I'll look forward to seeing the stipulated decree of divorce and I'll execute it upon presentation."

No stipulated decree of divorce was ever presented to the magistrate, and he executed the proposed decree later submitted by Mr. Coffel without first determining whether or not Melodee agreed to it. Under these circumstances, the divorce decree, at least with respect to the division of property and debts, was void.

■ In order for a judgment to be void, there must generally be some jurisdictional defect in the court's authority to enter the judgment, either because the court lacks personal jurisdiction or because it lacks jurisdiction over the subject matter of the suit. *Puphal v. Puphal*, 105 Idaho 302, 669 P.2d 191 (1983). A judgment is also void where it is entered in violation of due process because the party was not given notice and an opportunity to be heard. *Prather v. Loyd*, 86 Idaho 45, 382 P.2d 910 (1963) (judgment void where trial court entered judgment against makers of note without giving makers an opportunity to present evidence regarding their affirmative defense of lack of consideration). See also, *Wright v. Wright*, 130 Idaho 918, 950 P.2d 1257 (1998) (default judgment void where parties whose attorney had withdrawn did not serve upon them a copy of the order which contained notice that judgment by default could be entered if they did not appear in action within twenty-one days).

In the present case, although the parties' respective counsel stated that the case had been resolved, no agreement regarding the division of property and debts was placed on the record, and it is not clear from the record that any agreement regarding the division of all property and debts had ever been reached. In her affidavit submitted in support of her various post-judgment motions, Melodee stated that she never agreed to give up her interest in Paul's Tier II retirement benefits. The record does not contain any opposing affidavit to the contrary. Where, as here, the parties represented that the case had been resolved and that they would be submitting a stipulated decree, but none was presented to the court, the judge could have

called the parties back into court to determine whether there was an agreement or could have simply reset the matter for trial. The judge cannot simply execute a proposed decree representing one party's version of the settlement on the assumption that the other party's failure to object to the proposed decree constituted consent to it. There is nothing in the record indicating that Melodee or her counsel Ms. Buchin were ever informed that the failure to object to the proposed decree within a specified period of time would constitute consent to the decree. Thus, the divorce decree, at least with respect to the division of property and debts, was void.

 To obtain relief from a void judgment under Rule 60(b)(4) of the Idaho Rules of Civil Procedure, a party must bring a motion for such relief within a reasonable time. *Wright v. Wright*, 130 Idaho 918, 950 P.2d 1257 (1998). Where judgment is entered without the party's knowledge, what constitutes a reasonable time is judged from the time that the party learned of the judgment. *Id.* If a judgment is only void in part and the void portion can be separated from the balance, relief may be granted to that extent. *Wood v. Wood*, 100 Idaho 387, 597 P.2d 1077 (1979).

 In this case, Melodee first learned of the divorce decree during the week preceding the contempt hearing held on April 1, 1999. She first moved for relief under Rule 60(b)(4) on February 13, 2001, over twenty-one months later. The magistrate judge did not rule as to whether Melodee sought relief within a reasonable time. Rather, in denying Melodee's motion, the magistrate stated, "There is absolutely no evidence whatsoever that the Judgment is void." Although the magistrate's reason for denying the requested relief was clearly wrong, the magistrate did not err in denying the relief requested. Where an order of a lower court is correct, but based upon an erroneous theory, the order will be affirmed upon the correct theory. *Andre v. Morrow*, 106 Idaho 455, 680 P.2d 1355 (1984).

 In a divorce action, each spouse is not awarded an undivided one-half interest in each item of community property. Rather, the trial court determines the extent and value of the community property and then deducts the total of the community debts to arrive at a net value of the community estate. *Donndelinger v. Donndelinger*, 107 Idaho 431, 690 P.2d 366 (Ct.App.1984). The trial court then awards property and debts in such a manner as to divide that net value between the spouses. The same analysis typically occurs when the parties reach an agreement regarding the division of the community property and debts.

In this case, Melodee did not seek to set aside that portion of the divorce decree dividing the community property and debts between the parties. Rather, she sought relief from the judgment only with respect to one item of community property—the railroad retirement. To permit Melodee to set aside only the railroad retirement award under Rule 60(b)(4), while retaining the other items of property awarded to her, would, in essence, permit her to unilaterally craft the division of the community property and debts. Melodee could either accept the division of property and debts in the divorce decree, or she could move to set it aside under Rule 60(b)(4). She could not, however, affirm the decree with respect to the items awarded to her and seek only to set aside an item awarded to Paul.

### B. Did the Magistrate Judge Err in Denying Melodee's Motion for an Order Dividing the Tier II Component of Paul's Railroad Retirement Benefits?

 During the parties' marriage, Paul was employed by a railroad and was therefore covered by the Railroad Retirement Act which provides a system of retirement and disability benefits to railroad industry employees and their families. 45 U.S.C. § 231 *et seq.* Insofar as is relevant to this case, Paul would be entitled to retirement benefits having two components. One component, commonly called Tier I benefits, is an annuity designed to be equivalent to the old age or disability insurance benefit that would have been received under the Social Security Act. 45 U.S.C. § 231b(a). The other component, commonly called Tier II benefits, is an addi-

tional annuity that, like a private pension plan, is tied to the earnings and career service. 45 U.S.C. § 231b(b). As a result of the divorce, Melodee would also be entitled to a "divorced wife's annuity" subject to certain statutory conditions, including that Paul was at least 62 years of age and was receiving his railroad retirement, Melodee was at least 62 years of age and currently unmarried, and any social security benefits to which Melodee was entitled based upon her own earnings did not exceed the amount of her divorced spouse annuity under the Railroad Retirement Act. This annuity is designed to be equivalent to the benefits to which a divorced wife would be entitled under the Social Security Act based upon her husband's earnings. 45 U.S.C. § 231c(a)(1). The divorced spouse annuity is not part of and does not diminish the employee's retirement annuity. Neither Paul's Tier I benefits nor Melodee's divorced wife's annuity is divisible by a court upon divorce. *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979); 45 U.S.C. § 231m(b)(2).

The divorce decree entered in this case on December 23, 1998, awarded Paul "Railroad retirement," and it awarded Melodee "Her share of spousal retirement from railroad pursuant to guidelines." On January 14, 2000, Melodee filed a motion seeking entry of a qualified domestic relations order (QDRO) with respect to the railroad retirement. By that order, she sought a share of Paul's Tier II monthly benefits, upon his retirement, calculated by multiplying those benefits by a fraction, the numerator of which was the number of years that Paul worked for the railroad during the parties' marriage and the denominator of which was the total number of years he was employed by the railroad, and then dividing by two. By order issued on August 24, 2000, the magistrate judge denied the motion on the ground that the motion, filed more than two years after entry of the divorce decree, was not timely pursuant to either Rule 59(e) or 60(b) of the Idaho Rules of Civil Procedure. On August 30, 2000, Melodee filed a motion for reconsideration, which the magistrate judge denied by order issued on March 13, 2001.

Whether or not the magistrate judge erred in denying Melodee's motion for entry of a QDRO depends upon the meaning of the phrase "Her share of spousal retirement from railroad pursuant to guidelines" in the divorce decree. Paul contends that the phrase simply means the divorced wife's annuity to which she may ultimately be entitled under the Railroad Retirement Act. If that interpretation is correct, then Melodee was not entitled to any share of Paul's Tier II benefits, and the magistrate judge correctly denied her motion for a QDRO. Melodee contends that the phrase means her share of Paul's Tier II benefits earned during the marriage. If that interpretation is correct, the magistrate erred in denying her motion. Entry of the QDRO would neither alter or amend the judgment (Rule 59(e)) nor grant relief from the judgment (Rule 60(b)). It would simply enforce the judgment.

The phrase "Her share of spousal retirement from railroad pursuant to guidelines" is ambiguous. Because the divorced wife's annuity is not divisible by the court and does not constitute a share of the employee's retirement benefits, the phrase could be read as referring to Melodee's share of Paul's Tier II benefits earned during their marriage. On the other hand, the words "spousal retirement" may refer to the divorce wife's annuity provided under the Railroad Retirement Act. There are no "guidelines" that apply to either. There is a formula for calculating a spouse's share of his or her ex-spouse's retirement benefits that is called the "time rule," *Maslen v. Maslen,* 121 Idaho 85, 90, 822 P.2d 982, 987 n. 4 (1991), which is the formula proposed by Melodee in this case, and there are statutory conditions that must exist in order to be eligible to receive the divorced wife's annuity under the Railroad Retirement Act, 45 U.S.C. § 231a(c)(4). The magistrate judge did not resolve this ambiguity. Therefore, we vacate the order denying Melodee's motion for entry of a QDRO and remand this case for the magistrate judge to determine what was meant by the phrase "Her share of spousal retirement from railroad pursuant to guidelines." If that phrase awarded Melody a portion of Paul's Tier II benefits, then the magistrate should enter an

appropriate QDRO to enable Melodee to enforce that portion of the decree.

### C. Did the Magistrate Judge Err in Denying Melodee's Motion to Correct the Child Support Records of the Department of Health and Welfare?

 On May 27, 1999, Dennis C. Weigt, who was then representing Melodee, appeared in court in response to Paul's motion for partial satisfaction of judgment regarding child support payments. At that hearing, he stipulated that Paul was entitled to a partial satisfaction of judgment in the sum of $8,484, representing seven child support payments of $1,212 each. The magistrate judge then entered an order for partial satisfaction of judgment in that amount. Melodee contends that Mr. Weigt made a mistake because he did not realize that two of those seven payments were temporary child support payments made prior to the date specified in the decree for the commencement of child support. According to Melodee, the inclusion of those two payments in the partial satisfaction of judgment enabled Paul to then skip two child support payments. She also contends that the satisfaction of judgment included the payment made on April 5, 1998, through the Department of Health and Welfare, and that the Department in its records counted that payment as being in addition to the payments included in the partial satisfaction of judgment. She argues that as a result, Paul was able to skip a third child support payment.

Melodee did not file any motion seeking to amend or set aside the partial satisfaction of judgment. Rather, on February 9, 2001, she filed a motion seeking "an order requiring the Idaho Department of Health and Welfare to correct their child support records in this case." She based the motion upon Rules 60(a) and 60(b)(1) of the Idaho Rules of Civil Procedure. By order entered on March 13, 2001, the magistrate judge denied the motion to correct Health and Welfare records on the ground that it was untimely under Rule 60(b) and there was no clerical error under Rule 60(a).

 The Department of Health and Welfare is not a party to this litigation, and relief from any errors or mistakes in its records is not available under either Rule 60(a) or 60(b). Rule 60(a) provides for the correction of "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission." The reference to "other parts of the record" refers to the court's record, not to the records of another branch of government. Likewise, Rule 60(b) provides for relief from "a final judgment, order, or proceeding" for one of the specified reasons. The records of the Department of Health and Welfare, or any actions it has taken, do not constitute "a final judgment, order, or proceeding" under that rule.

 With respect to the Department allegedly double counting the child support payment made on April 5, 1998, the child support payments were ordered by the court. Although those payments are paid to the Department, IDAHO CODE § 32–710A (2003 Supp.), the records of those payments maintained by the Department are not conclusive. Paul is still obligated to make the payments ordered in the decree. If he failed to do so, Melodee can bring an appropriate proceeding to enforce payment regardless of what is stated in the Department's records.

### D. Did the Magistrate Judge Err in Awarding Attorney Fees to Paul Pursuant to Idaho Code § 12–121?

 The magistrate judge awarded Paul attorney fees pursuant to Idaho Code § 12–121 on the ground that he was the prevailing party. Melodee challenged that award on appeal to the district court, and it held that it had no jurisdiction to consider the issue because Melodee had not filed an amended notice of appeal after entry of the magistrate's order awarding attorney fees.

The magistrate's order disposing of all pending motions was entered on March 14, 2001. On March 20, 2001, Paul filed a memorandum of costs seeking attorney fees under Idaho Code § 12–121. On April 19, 2001, Melodee filed her notice of appeal to the district court. The issue of attorney fees was heard during a telephonic conference on April 26, 2001, and on May 29, 2001, the

magistrate judge issued its order awarding Paul attorney fees. The district court held, and Paul argues on appeal, that Melodee could not appeal the attorney fee award without filing a timely amended notice of appeal after that order was entered.

Appeals to the district court from decisions of magistrate judges are governed by Rule 83(a) of the Idaho Rules of Civil Procedure. Rule 83(x) provides:

> Any appellate procedure not specified or covered by these rules shall be in accordance with the appropriate rule of the I.R.C.P. or the I.A.R. to the extent the same is not contrary to this Rule 83. These rules shall be construed to provide a just, speedy and inexpensive determination of all appeals.

Rule 83 does not specify whether an amended notice of appeal must be filed in order to appeal from orders that are entered after the judgment or order from which the appeal is taken. Rule 17(e)(1)(C) of the Idaho Appellate Rules does so specify, however. It states, "The notice of appeal shall designate the final judgment, order or decree appealed from which shall be deemed to include, and present on appeal: ... All interlocutory or final judgments, orders and decrees entered after the judgment, order or decree appealed from." Therefore, pursuant to Rule 83(x), the procedure in Idaho Appellate Rule 17(e)(1)(C) applies and the appeal filed by Melodee included the order later entered awarding attorney fees to Paul.

An award of attorney fees under Idaho Code § 12–121 is not a matter of right to the prevailing party, but is appropriate only when the court, in its discretion, is left with the abiding belief that the case was brought, pursued, or defended frivolously, unreasonably, or without foundation. *Nampa & Meridian Irrigation Dist. v. Washington Fed. Savings*, 135 Idaho 518, 20 P.3d 702 (2001). When deciding whether the case was brought, pursued, or defended frivolously, unreasonably, or without foundation, the entire course of the litigation must be taken into account. *Id.* Thus, if there is a legitimate, triable issue of fact, attorney fees may not be awarded under I.C. § 12–121 even though the losing party has asserted factual or legal claims that are frivolous, unreasonable, or without foundation. *Id.* Although an award of attorney fees under the statute is discretionary, the award must be supported by findings, and those findings, in turn, must be supported by the record. *Wait v. Leavell Cattle, Inc.*, 136 Idaho 792, 41 P.3d 220 (2002).

In this case, the magistrate judge did not make any findings supporting an award of attorney fees under Idaho Code § 12–121. In addition, as is indicated by our decision vacating one of the orders issued by the magistrate, the entire course of Melodee's post-decree litigation was not frivolous, unreasonable, or without foundation. Therefore, we reverse the award of attorney fees.

**E. Did the District Judge Err in Awarding Attorney Fees on Appeal to Paul Pursuant to Idaho Code § 12–121?**

The district court awarded attorney fees on appeal to Paul on the ground that Melodee brought the appeal frivolously and without foundation. Since we have vacated one order issued by the magistrate, her appeal to the district court was not entirely frivolous or without foundation. We therefore reverse the district court's award of attorney fees on appeal.

**F. Should Either Party Be Awarded Attorney Fees on This Appeal Pursuant to Idaho Code § 12–121?**

Both parties request attorney fees on appeal pursuant to Idaho Code § 12–121. Attorney fees can be awarded on appeal under that statute only if the appeal was brought or defended frivolously, unreasonably, or without foundation. *Gustaves v. Gustaves*, 138 Idaho 64, 57 P.3d 775 (2002). From the above, it is obvious that the appeal was neither brought nor defended frivolously, unreasonably, or without foundation. Therefore, we do not award either party attorney fees on appeal.

## IV. CONCLUSION

We vacate the order of the magistrate judge denying Melodee's motion for entry of a qualified domestic relations order and re-

mand that issue for further proceedings consistent with this opinion. We reverse the orders of the magistrate judge and district court awarding Paul attorney fees under Idaho Code § 12–121. We affirm the order of the magistrate judge denying Melodee's motion for relief under Rule 60(b)(4) and denying her motion to correct the records of the Department of Health and Welfare. Because both parties prevailed in part, we do not award costs on appeal.

Chief Justice TROUT and Justices SCHROEDER, KIDWELL and BURDICK concur.