129 P.3d 1285

**Theresa Jo LIEURANCE–ROSS, Plaintiff–Respondent,**

v.

**Randy ROSS, formerly appearing by his guardian and conservator Loren Ross, now appearing personally, Defendant–Appellant.**

No. 31594.

Court of Appeals of Idaho.

Feb. 7, 2006.

Bauer & French, Boise, for appellant. Charles B. Bauer argued.

Ludwig, Shoufler, Miller, LLP, Boise, for respondent. Bret W. Shoufler argued.

WALTERS, Judge Pro Tem.

Randy Ross appeals from the order of the district court, on intermediate appeal, affirming the magistrate's award of attorney fees to Theresa Jo Lieurance–Ross in a divorce action. We reverse the district court's decision and reverse the award entered by the magistrate.

## I.

### FACTS AND PROCEDURE

Randy and Theresa were married and, in August 1999, the couple's first child was born. In December 2002, Randy suffered an aneurysm followed by a stroke. In April 2003, the couple's second child was born. That same month, Randy's parents were granted a general guardianship and conservatorship over their son due to the incapacity resulting from his aneurysm and stroke.

On May 2, Theresa filed a complaint alleging that irreconcilable differences had arisen making continuation of her marriage to Randy impossible. Theresa asked the magistrate to enter a decree of divorce and to award sole legal and physical custody of the parties' children to her. On May 27, Randy, through his father and guardian Loren Ross, filed an answer, a counterclaim, and a motion for a temporary order to place the children in Randy's care pending resolution of the divorce. Randy alleged that granting him primary physical custody and granting joint legal custody would serve the children's best interests.

On June 24, a hearing was held on Randy's temporary custody motion. Loren testified that, prior to Randy's incapacity, Randy participated equally in the parenting of the couple's older child. Loren testified that Randy could walk slowly and deliberately, could understand what was said to him, was regaining his verbal skills, and was regaining the use of his right hand. Loren indicated that Randy and the children could play games or watch videos together. Loren testified that Randy was capable of caring for his children with the support of his guardians. Randy, although present in the courtroom, did not testify regarding his ability to parent.

The magistrate noted that, because Randy was the subject of a guardianship, he had been adjudicated incapacitated and was by law incapable of making decisions for himself. Accordingly, the magistrate found that Randy could not exercise legal or physical custody of the children. The magistrate awarded Theresa temporary sole legal and physical custody and granted Randy supervised visitation two days a week.

In July and August, Randy filed interrogatories designed to obtain information about Theresa's ability to parent and the location of personal property. During the course of discovery, Randy provided Theresa with a list of personal property, alleging that more than sixty items on the list remained in Theresa's possession. Included on this list were miscellaneous items of furniture, a dryer, a coffeemaker, photos, a blender, a deep fat fryer, cast iron skillets, two crock-pots, dishes, a crocheted clown, a stuffed red monster doll, Afghans, a stuffed bunny, and sunglasses. Theresa provided a written response to all items on the list, indicating that some items she was using, some items she did not know the location of, other items were broken, and items were sold to raise money to support her children following Randy's incapacity.

At trial on September 25, the parties informed the magistrate that they had reached a stipulation to award sole joint and legal custody of the children to Theresa but that the division of property and debts remained at issue. Theresa testified that she would return certain items of property and that her written response to the property list, which was admitted into evidence, set forth her explanation as to what had happened to the other items of property. On cross-examination, Randy questioned Theresa extensively regarding her explanation. Eventually, the magistrate indicated that it would not hear any more testimony regarding the disposition of items of personal property with little to no value and ordered a recess. The parties then stipulated to the disposition of the property and debts. The magistrate entered a decree of divorce.

Theresa filed a motion for an award of attorney fees alleging that she incurred substantial fees as a result of Randy's unreasonable positions regarding child custody and property. The magistrate found that, until the time of trial, the case had focused on custody. The magistrate concluded that it was frivolous for Randy, having been adjudicated incapacitated, to seek custody of his children. The magistrate also indicated that, while property disputes would ordinarily preclude a finding of frivolousness, Randy's position regarding items of personal property had been frivolous and unreasonable. Accordingly, the magistrate found that Randy had defended the entire divorce action in an unreasonable and frivolous manner and awarded attorney fees to Theresa.

Randy appealed to the district court, arguing that the award of attorney fees represented an abuse of the magistrate's discretion. The district court affirmed the order of the magistrate and awarded attorney fees to Theresa on intermediate appeal. Randy again appeals.

## II.

## ANALYSIS

■ Randy contends that his status of having a guardian, standing alone, did not preclude him from seeking custody of his children. Randy also contends that his attempt to retrieve items of personal property with sentimental value was not unreasonable. Randy urges that, therefore, his arguments before the magistrate were not unreasonable or frivolous and that the district court erred in affirming the magistrate's award of attorney fees. Randy also argues that his appeal to the district court raised genuine issues of law and, thus, the district court's award of attorney fees on intermediate appeal was in error. Theresa argues that we should affirm the order of the district court and that we should order Randy to pay her attorney fees for the instant appeal.

### A. Attorney Fees Awarded by the Magistrate

■ On review of a decision of the district court, rendered in its appellate capacity, we examine the record of the trial court independently of, but with due regard for, the district court's intermediate appellate decision. *Hentges v. Hentges,* 115 Idaho 192, 194, 765 P.2d 1094, 1096 (Ct.App.1988).

■ An award of attorney fees under I.C. § 12–121 [1] is appropriate when the trial court, in its discretion, is left with the abiding belief that the action was pursued, defended, or brought frivolously, unreasonably, or without foundation. I.R.C.P. 54(e)(1); *McGrew v. McGrew,* 139 Idaho 551, 562, 82 P.3d 833, 844 (2003); *Nampa & Meridian Irr. Dist. v. Washington Federal Sav.,* 135 Idaho 518, 524, 20 P.3d 702, 708 (2001). The award of attorney fees rests in the sound discretion of the trial court, and the burden is on the

person disputing the award to show an abuse of discretion. *Nampa & Meridian Irr. Dist.,* 135 Idaho at 525, 20 P.3d at 709. However, the award must be supported by findings as set forth in I.R.C.P. 54(e)(2), and those findings, in turn, must be supported by the record. *McGrew,* 139 Idaho at 562, 82 P.3d at 844; *Wait v. Leavell Cattle, Inc.,* 136 Idaho 792, 799, 41 P.3d 220, 227 (2001).

■ Section 12–121 authorizes an award of attorney fees to the prevailing party in a civil action. Thus, when deciding whether the case was brought or defended frivolously, unreasonably, or without foundation, the entire course of the litigation must be taken into account.[2] *Vendelin v. Costco Wholesale Corp.,* 140 Idaho 416, 434, 95 P.3d 34, 52 (2004); *McGrew,* 139 Idaho at 562, 82 P.3d at 844. If there is a legitimate, triable issue of fact, attorney fees may not be awarded under I.C. § 12–121 even though the losing party has asserted factual or legal claims that are frivolous, unreasonable, or without foundation. *Vendelin,* 140 Idaho at 434, 95 P.3d at 52; *Nampa & Meridian Irr. Dist.,* 135 Idaho at 524–25, 20 P.3d at 708–09. Here, the magistrate could award attorney fees only if it correctly concluded that both Randy's position regarding custody and his position regarding property were unreasonable or frivolous throughout the entire course of the litigation.

Randy contends that the magistrate determined his custody claim was frivolous as a result of its erroneous conclusion that, because Randy was the subject of a guardianship, he was *ipso facto* precluded from seeking custody of his children. Randy alleges that he did not assert he could independently care for his children but, rather, asserted he could parent his children with the assistance of his guardians. Theresa contends that the magistrate found Randy's custody claim friv-

---

1. Theresa originally requested an award of attorney fees pursuant to not only I.C. § 12–121, but also pursuant to I.C. § 12–123, I.C. § 32–704, and I.R.C.P. 11. However, the magistrate found that, because Theresa only submitted authority to support her request for fees under Section 12–121, the other grounds had been abandoned. The magistrate therefore based its decision to award fees on Section 12–121.

2. In contrast, Section 12–123 authorizes sanctions for "frivolous conduct," which is defined as filing an action or asserting a claim, defense, or other position that serves to harass or injure another party or is not supported in fact or warranted under existing law. Section 12–123 authorizes an award of attorney fees in an amount that was both reasonably incurred by a party and necessitated by the frivolous conduct. *See* I.C. § 12–123(c).

olous because Randy failed to present evidence from which the magistrate could have concluded that Randy was capable of parenting, notwithstanding the guardianship.

In awarding attorney fees, the magistrate indicated:

[T]here's no question that ... up until the time of trial this case was focused almost exclusively on the custody issue. And, there's absolutely no question in my mind that [Loren] took a completely frivolous position on the issue of custody.... He sought custody for [Randy], a person adjudicated incompetent who couldn't care for himself.

And it's just absolutely impossible that we could interpret the law so as to give custody to a person who can't care for himself. And this is certainly distinct from someone who has physical disability that they can get assistance with ... Someone else has to make [Randy's] decisions.

And it's absolutely impossible for the court to give custody to someone who isn't capable of making decisions.

That, I think, was and remains a frivolous argument.

Contrary to Theresa's contention, the magistrate did not base its finding that Randy's custody claim was frivolous on Randy's failure to present evidence demonstrating that he was capable of parenting. Instead, the magistrate found that Randy's custody claim was frivolous because the court decided it was impossible for a parent subject to a guardianship to be awarded custody of his or her children. If the magistrate's determination that the existence of a guardianship *per se* precludes a parent from seeking custody was inconsistent with applicable legal standards, we will conclude that the magistrate abused its discretion in finding Randy's custody claim was frivolous. *See Anderson v. Goodliffe,* 140 Idaho 446, 450, 95 P.3d 64, 68 (2004).

A guardian may be appointed for an incapacitated person. *See* I.C. §§ 15–5–303, 15–5–304(b). An "incapacitated person" means any person who is impaired, except by minority, to the extent that he or she lacks sufficient understanding or capacity to make or communicate responsible decisions concerning his or her person. I.C. § 15–5–101(a). Incapacity refers to any person who has suffered, is suffering, or is likely to suffer, substantial harm due to an inability to provide for his or her personal needs for food, clothing, shelter, health care, or safety, or an inability to manage his or her property or financial affairs. I.C. § 15–5–101(a)(1). The statute clarifies that "incapacity" is a legal, rather than medical, disability. *Id.*

■ Initially, we address Randy's allegation that, because guardianship laws indicate persons with guardians should participate in making their own decisions to the extent permitted by their abilities, the magistrate should have regarded Randy's guardianship as applicable to the extent necessary based on his abilities at the time of the temporary custody hearing. A guardianship may be limited or general. *See* I.C. § 15–5–303(a). The guardianship statutes recognize that every individual has unique needs and differing abilities and that the public welfare should be promoted by establishing guardianships that permit incapacitated persons to participate as fully as possible in all decisions affecting them. *See id.* A court appointing a guardian for an incapacitated person must encourage the development of maximum self-reliance and independence by making appointive orders only to the extent necessitated by the incapacitated person's actual mental and adaptive limitations. *See* I.C. § 15–5–304(a). If the court determines that a person's limitations do not necessitate the appointment of a general guardian, it may dismiss the petition, appoint a conservator,[3] or limit the powers of the guardian. *See* I.C. §§ 15–5–304, 15–5–401.

Thus, the guardianship statutes relied upon by Randy applied to the *guardianship* court's determination of whether a general or limited guardianship was appropriate and did not apply to the magistrate dealing with Randy and his guardian in a subsequent,

---

**3.** A conservator has the power of a trustee and has the duty to act as a fiduciary. *See* I.C. §§ 15–5–417, 15–5–424. A showing of incapacity is not required for the appointment of a conservator. *See* I.C. § 15–5–401(b).

nt part:

unrelated proceeding. Prior to the commencement of the temporary custody hearing, the magistrate indicated that it was "looking at a photocopy of letters of guardianship and conservatorship ... by which [the guardianship court] gives general guardianship" of Randy to his parents. If Randy was subject to a form of limited guardianship, the limitations should have been reflected in the letters of guardianship. *See* I.C. § 15–5–304(c). If Randy was no longer sufficiently incapacitated to warrant a general guardianship, appropriate mechanisms existed to have the guardianship removed or to limit the guardians' authority. *See* I.C. §§ 15–5–304(c), 15–5–306, 15–5–307. Therefore, the magistrate was not at liberty to construe Randy's guardianship as something other than a general guardianship.

■ Nevertheless, we cannot agree with the magistrate's conclusion that a parent with a guardian is precluded from exercising any level of custody of his or her child. In any court decision affecting children, the best interests of the child should be the primary consideration. *Roberts v. Roberts,* 138 Idaho 401, 403–04, 64 P.3d 327, 329–30 (2003). There is no dispute that the best interest of the children dictates that they should have the love, support, guidance, and companionship of both their parents. *Ziegler v. Ziegler,* 107 Idaho 527, 534, 691 P.2d 773, 780 (Ct.App.1985). "Joint physical custody" refers to a situation in which a child spends significant time under the care and supervision of each parent. *See* I.C. § 32–717B(2). "Joint legal custody" refers to a situation in which the parents share the decision-making rights, responsibilities, and authority relating to the health, education, and general welfare of the child. *See* I.C. § 32–717B(3). Parents with guardians have unique needs and differing abilities, those parents will have varying abilities to exercise either physical or legal custody of a child. *See* I.C. § 15–5–303(a). Thus, a parent who has been adjudicated incapacitated as a result of primarily physical limitations might be unable to exercise joint physical custody of a small child but might have the capacity to exercise joint legal custody of that child.

Further, in determining appropriate custody placements and the best interests of the children, I.C. § 32–717(2) provides, in pertinent part:

If the parent has a disability as defined in this section, the parent shall have the right to provide evidence and information regarding the manner in which the use of adaptive equipment or supportive services will enable the parent to carry out the responsibilities of parenting the child. The court shall advise the parent of such right. Evaluations of parental fitness shall take into account the use of adaptive equipment and supportive services for parents with disabilities and shall be conducted by, or with the assistance of, a person who has expertise concerning such equipment and services.

"Supportive services" means services, which assist a parent with a disability with those aspects of the disability which affect the parent's ability to care for his or her child and which will enable the parent to discharge his or her parental responsibilities. I.C. § 32–717(4)(c). In any case where the disability of a parent is found by the court to be relevant to an award of child custody, the court shall make specific findings concerning the disability and what effect, if any, the court finds the disability has on the best interest of the child. I.C. § 32–717(5).

Although the magistrate was not at liberty to construe Randy's guardianship as limited, it was incumbent upon it to consider what particular limitations resulted in the appointment of a general guardian and how those limitations related specifically to Randy's ability to parent. At the hearing to determine temporary custody, Randy presented only Loren's testimony regarding Randy's ability to parent. Loren testified that Randy's recovery was progressing at a rate, which exceeded expectations, and that he was living a virtually independent lifestyle. We note that it would have been preferable for Randy to petition the guardianship court prior to seeking custody of his children and to have the general guardianship modified either to a limited guardianship or terminated altogether if appropriate. Additionally, Randy could have presented medical affidavits or

testimony to the magistrate reflecting the progression of his recovery and the current extent of his parenting abilities. Nonetheless, Randy's failure to present a persuasive custody case did not render his position that parents with guardians can exercise custody frivolous and unreasonable. Although the magistrate was entitled to consider the guardianship court's adjudication that Randall was sufficiently incapacitated to warrant appointment of a general guardian, we conclude that it was error for the magistrate to give that adjudication preclusive weight for determining the custody issue.

The magistrate found that Section 32–717(2) was inapplicable because Randy was legally incapacitated.[4] In light of our conclusion that a parent with a guardian is not precluded from seeking custody of his or her child, we see no reason to apply Section 32–717(2) differently in situations where a parent with a disability has a guardian from those situations where a parent with a disability does not have a guardian. In either scenario, the court is required to make findings regarding the effect the disability has on the parent's ability to carry out parenting responsibilities and whether adaptive equipment or supportive services can compensate for those aspects of the disability, which affect the parent's ability to care for his or her child. *See* I.C. §§ 32–717(2), 32–717(5)

■ Accordingly, in discharging its primary responsibility of determining the best interest of the children, a court should consider evidence as to whether a parent with a disability is capable of meeting the children's needs, notwithstanding the existence of a guardianship. By basing its conclusion that Randy's custody argument was frivolous on the premise that Randy was absolutely precluded from seeking custody, the magistrate failed to act consistently with the applicable legal principles and therefore abused its discretion.

Randy also contends that the magistrate erred in determining that his property claim was frivolous because he was entitled to inquire about the location of items of personal property, which had sentimental value. Although not necessarily unreasonable or frivolous to attempt the retrieval of items with sentimental value, we note that Randy vigorously sought the return of more than sixty such items. Further, Theresa responded to Randy's inquiries regarding the allegedly missing property prior to trial. Randy then refused to accept Theresa's responses and used the divorce trial as an opportunity to impeach her explanation on the location of items such as a stuffed bunny, a monster doll, and a crock-pot.

Nonetheless, because we have determined that Randy's custody claim was not frivolous, we need not consider whether Randy's property claim was frivolous in order to conclude that the entire course of the litigation was not defended in a frivolous and unreasonable manner. Therefore, the magistrate's award of attorney fees in this case represented an abuse of its discretion.

### B. Attorney Fees on the Intermediate and Instant Appeal

■ Randy contends that his appeals to the district court and this Court have raised meaningful questions of law. Randy argues that, therefore, the district court should not have awarded attorney fees to Theresa on intermediate appeal and Theresa is not entitled to attorney fees on this appeal. An award of attorney fees may be granted under I.C. § 12–121 and I.A.R. 41 to the prevailing party and such an award is appropriate when the court is left with the abiding belief that the appeal has been brought or defended frivolously, unreasonably, or without foundation. *Rendon v. Paskett,* 126 Idaho 944, 945, 894 P.2d 775, 776 (Ct.App.1995). Because Randy has prevailed in the instant appeal, we must conclude that the district court erred by awarding attorney fees to Theresa on intermediate appeal. Similarly, Theresa is not entitled to attorney fees on the instant appeal.

---

**4.** Apparently, the magistrate also considered this section inapplicable because of its finding that Randy suffered from mental impairments. However, to be "disabled" within the meaning of Section 32–717, an individual must have any mental or physical impairment that substantially limits one or more major life activities. I.C. § 32–717(4)(b). Thus, this section applies not only to parents with physical impairments but, also, to those with mental impairments.

## III.

## CONCLUSION

The magistrate based its finding that Randy's custody claim was frivolous on the erroneous conclusion that a parent with a guardian is precluded from exercising custody of his or her children. Accordingly, the magistrate abused its discretion in finding that Randy defended the entire course of the litigation in a frivolous and unreasonable manner and by awarding attorney fees to Theresa. We reverse the order of the district court, which affirmed the magistrate's award of attorney fees and awarded attorney fees on intermediate appeal to Theresa, and we reverse the order of the magistrate awarding attorney fees to Theresa. No costs or attorney fees are awarded on the instant appeal.

Judge LANSING and Judge GUTIERREZ concur.