# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 36322

PAMELA K. JOERGER STEPHEN,

    Plaintiff/Respondent/Cross-Appellant,

v.

SALLAZ & GATEWOOD, CHTD., DENNIS
SALLAZ and SCOTT GATEWOOD,

    Defendants/Appellants/Cross-
    Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, February 2011 Term

2011 Opinion No. 26

Filed: March 17, 2011

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Honorable Michael R. McLaughlin, District Judge.

The judgment of the district court is <u>affirmed</u>.

Gary L. Quigley, Meridian, for appellants.

Clark & Associates, Boise, for respondent. Eric R. Clark argued.

————————————

J. JONES, Justice.

This is an appeal from a legal malpractice judgment entered against attorney Scott Gatewood and the law firm of Sallaz & Gatewood, Chtd. Appellants argue the district court erred in finding that professional malpractice had occurred. Both parties appeal the denial of their respective requests for attorney fees. We affirm.

## I.

## Factual and Procedural Background

This case arises from a malpractice action brought by Pamela Joerger Stephen ("Pamela") against the law firm of Sallaz & Gatewood, Chtd., Scott Gatewood ("Gatewood") and Dennis Sallaz ("Sallaz") (all three of the defendants are herein collectively referred to as "Appellants"). Pamela's ex-husband, Gary Stephen ("Stephen"), filed for divorce in May of 2003. During the divorce proceedings, Stephen retained attorney Ann Shepard to represent him, and Pamela

retained Sallaz & Gatewood, Chtd. Pamela claims the Appellants committed malpractice by failing to make inquiries into her mental status during the divorce proceedings and by failing to properly investigate, inform, and advise her regarding the fair market value of real property that was part of the settlement agreement, which resulted in her receiving less than her equitable share of the community property.

The district court found that Gatewood was liable for malpractice in his representation of Pamela for (1) failing to inquire into Pamela's mental status prior to trial or for failing to seek a continuance, and (2) failing to investigate, inform, and advise her with respect to the value of the couple's Crescent Rim property. The court determined that Sallaz & Gatewood, Chtd., was also liable for the malpractice judgment.

With regard to the first finding, the district court noted that Gatewood had many indications of Pamela's alleged mental incapacity. Specifically, Pamela disclosed to Gatewood during a June 2003 meeting that she suffered from bi-polar disorder, that she had attempted suicide on two separate occasions, and that she was taking medications for her condition. The court also noted that Pamela was living in an unstable environment at the time of the divorce proceedings because she was residing in the couple's Crescent Rim property with another man while Stephen made payments on the property. Pamela was also receiving income from the couple's rental property at the time, but failed to make mortgage payments or pay other expenses on the rental property. Gatewood was also aware that Pamela had been involuntarily hospitalized approximately one week before the trial was scheduled to begin but "did not inquire of [Pamela] where she had been hospitalized, for what reason or by what doctor." Stephen's attorney also advised Gatewood that Pamela was using methamphetamine. Finally, the court noted that Gatewood had to personally visit Pamela's residence on several occasions in an effort to speak to her. Gatewood even filed a motion to withdraw as Pamela's attorney in July of 2004, identifying a "total communication breakdown" as the basis for the motion. Although the motion was ultimately withdrawn, Pamela testified that she received very little correspondence, court pleadings or discovery information from Gatewood during the divorce proceedings.

On the second issue, the district court found that because Pamela was never informed of Stephen's valuation of the couple's Crescent Rim property, she undervalued the property for purposes of settlement. The parties exchanged discovery requests in September of 2003, including interrogatories seeking, among other things, the other's valuation of the Crescent Rim

property. Stephen was the first to respond, and he disclosed the property value to be $500,000. Pamela testified that Gatewood never informed her of this valuation and Gatewood testified he could not recall if he had. Pamela subsequently valued the property at only $385,500. This final valuation was used in the couple's final settlement agreement. There was also evidence that a judgment lien against the Crescent Rim property had been paid prior to trial, but the amount of the lien was nonetheless credited to Stephen in the settlement.

On the first day of the divorce trial, the parties informed the district court that they had reached a proposed settlement agreement. When the court asked Pamela if she understood the agreement, Pamela responded that she was in agreement "as far as I know." However, Gatewood testified that Pamela was "clear in her thoughts and understanding" at the time of the proceedings and that he "did not believe that she was impaired as a result of methamphetamine use and/or mental health issues."

In the subsequent malpractice action against Appellants, the court found that Gatewood breached duties owed to Pamela and imposed liability in the amount of $27,435.00 against Gatewood, personally, as well as against Sallaz & Gatewood, Chtd. However, the district court declined to assess any personal liability against Sallaz because the court found that he had never provided any legal services to Pamela, nor had he acted in a supervisory capacity over Gatewood. The court made this finding despite Sallaz being named as an attorney in documents filed with the court during the divorce proceedings and despite Sallaz's affiliation with Sallaz & Gatewood, Chtd.[1] The court also awarded Pamela $5,359.49 in costs, but refused to award discretionary costs pertaining to the appointment of a guardian ad litem during the course of the malpractice action. Pamela and Sallaz both sought an award of attorney fees, but both requests were denied.

On appeal, Appellants argue that the district court erred in its determination of the duties owed to Pamela, and contend that there was no evidence establishing a breach of any duties. They also argue that Pamela's malpractice claim is barred by judicial estoppel and judgmental immunity, and that liability cannot be imposed upon a law firm. Pamela argues that the final damage award is in error, and that Sallaz should be personally liable for the malpractice

---

[1] Pamela executed a fee agreement with Sallaz & Gatewood, Chtd. on June 16, 2003, but the firm was not incorporated until September 9, 2003. Therefore, it is likely that Sallaz and Gatewood were operating as a general partnership at the time of entering into this agreement.

judgment. Both Sallaz and Pamela argue that the court erred in denying their request for attorney fees, and Pamela argues the court erred in denying her request for discretionary costs.

## II.
### Issues on Appeal

I.  Is the malpractice judgment against Gatewood supported by substantial evidence?

II.  Are Pamela's incapacity claims barred by the doctrines of judicial estoppel and judgmental immunity?

III.  Can liability be imposed against Sallaz & Gatewood, Chtd.?

IV.  Did the district court err in determining Sallaz was not personally liable?

V.  Did the district court err in calculating the damage award to Pamela?

VI.  Did the district court err in denying attorney fees to either Sallaz or Pamela?

## III.
### Analysis

#### A. Standard of Review

When reviewing a district court's conclusions following a bench trial, this Court "is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law." *Borah v. McCandless,* 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2009). This Court liberally construes the facts in favor of the district court's decision because it is the province of the district court to weigh the evidence and determine the credibility of the witnesses. *Id.* Findings of fact will not be overturned if supported by substantial, albeit conflicting, evidence. *Id.*

#### B. The District Court's Finding that Gatewood Committed Legal Malpractice is Supported by Substantial Evidence.

Appellants contend the district court erred in finding that Gatewood committed legal malpractice in his representation of Pamela. Specifically, they argue that the district court misapprehended the duty owed to Pamela as a client with a diminished capacity, and that there was no evidence to support the finding of breach in that regard. Additionally, they argue that Gatewood had no duty to investigate the value of the Crescent Rim property because there was

not a significant difference in the values provided by the parties, and because attorneys are permitted to rely on the valuations provided by their clients.[2]

Pamela argues that Gatewood breached the duties he owed to her by failing to properly investigate, inform, and advise her as to the value of the Crescent Rim property, separate and apart from his breach for failing to investigate her diminished capacity. She argues that Gatewood never told her about the $500,000 valuation made by Stephen and that no competent attorney would have knowingly advised a client to provide a substantially lower valuation. Pamela also argues there was sufficient evidence to support the malpractice finding regarding her diminished capacity.

The district court found that Gatewood breached duties he owed to Pamela by failing to investigate, inform, and advise her regarding the value of the Crescent Rim property when such a disparity existed between the valuations provided by the parties. The court found that Gatewood's failure to inquire into Pamela's mental state and to take appropriate protective measures also breached the duties he owed her.

We affirm the district court's finding that Gatewood committed legal malpractice by failing to investigate, inform, and advise Pamela regarding the value of the Crescent Rim property. Therefore, it is unnecessary to address the district court's finding that Gatewood committed malpractice by failing to adequately inquire into Pamela's alleged diminished capacity. For this reason, we also decline to address Appellants' judicial estoppel and judgmental immunity arguments.

A legal malpractice action is based on a combination of tort and contract theories. The attorney-client relationship is generally based on contract principles, while the negligence standard is based on tort principles. *See Harrigfeld v. Hancock*, 140 Idaho 134, 136, 90 P.3d 884, 886 (2004).

---

[2] Appellants also argue that Pamela cannot challenge a single aspect of her settlement agreement, specifically the valuation of the Crescent Rim property, without violating the rule of *McGrew v. McGrew*, 139 Idaho 551, 559, 82 P.3d 833, 841 (2003). In that case, after a settlement agreement was stipulated to in court, the ex-wife learned that the judgment was void for lack of jurisdiction and sought to invalidate only the distribution of the railroad retirement pension pursuant to Rule 60(b)(4). *Id.* However, the Court ruled that to allow this would "permit her to unilaterally craft the division of the community property and debts. . . . She could not, however, affirm the decree with respect to the items awarded to her and seek only to set aside an item awarded to Paul." *Id.* This case is distinguishable from *McGrew* because Pamela is not seeking to invalidate the settlement agreement, and is certainly not invoking Rule 60(b)(4). Rather, she is using the undervaluation of the Crescent Rim property as a basis for a separate malpractice action against her attorney, which has no effect on the settlement agreement with her ex-husband. Therefore, *McGrew* is inapplicable to this case.

The elements of a legal malpractice action are: (a) the existence of an attorney-client relationship; (b) the existence of a duty on the part of the lawyer; (c) failure to perform the duty; and (d) the negligence of the lawyer must have been a proximate cause of the damage to the client.

*Id.* The burden of proving that the attorney failed to act with "proper skill and that damages resulted therefrom is on the plaintiff client and likewise, the burden is on the plaintiff to show that the negligence of the attorney was a proximate cause of the client's damage." *Id.* (internal citation omitted).

"The existence of a duty of care is a question of law over which this Court exercises free review." *Jones v. Starnes*, 150 Idaho 257, 260, 245 P.3d 1009, 1012 (2011). "An attorney's duty arises out of the contract between the attorney and his or her client." *Harrigfeld*, 140 Idaho at 137, 90 P.3d at 887. In this case, Pamela retained Gatewood's firm "to represent [her] interests in connection with a divorce and related matters." A requisite component of a divorce action is the valuation of property making up the community estate. *See generally McGrew*, 139 Idaho at 559, 82 P.3d at 841. Therefore, because Pamela retained the firm for assistance with her divorce proceedings, this representation implicitly included assistance with the valuation of the Crescent Rim home.

In providing such assistance, Gatewood owed Pamela the duties of competent and diligent representation, as well as adequate communication. *See* Idaho Rules of Professional Conduct (I.R.P.C.) 1.1, 1.3, 1.4.[3] *See also Heinze v. Bauer*, 145 Idaho 232, 238, 178 P.3d 597, 603 (2008). In order to provide competent representation, an attorney must use the "legal knowledge, skill, *thoroughness*, and preparation reasonably necessary for the representation." I.R.P.C. 1.1 (emphasis added). To be adequately prepared and thorough, the attorney must make "inquiry into and analysis of the factual and legal elements of the problem . . . ." *Id.*, cmt. 5. Additionally, an attorney must be diligent in providing representation, and zealously pursue the client's objectives as defined by the scope of the representation. *See* I.R.P.C. 1.3. Finally, in terms of communication, an attorney must keep the client informed about the matter for which the attorney was retained, and must also explain the matter to the client so that the client can make informed decisions. I.R.P.C. 1.4.

---

[3] While the rules of professional conduct cannot be used as a basis to impose civil liability, *see* I.R.C.P., *Scope*, ¶ 20, they are informative of the standard of care that an attorney owes to his or her client. *See Johnson v. Jones*, 103 Idaho 702, 705, 652 P.2d 650, 653 (1982) (using professional responsibility rules to identify the standard of care owed by an attorney acting under a conflict of interest).

There is substantial evidence in the record that Gatewood violated these duties in regard to the Crescent Rim property. Pamela testified, and Gatewood was unable to rebut, that she was never informed of Stephen's initial $500,000 valuation of the property. Without this information, Pamela relied on an "old appraisal" to make her estimation of the property's value, and ultimately provided a value that was over one-hundred-thousand dollars less than Stephen's valuation. This does not appear to be an informed decision on Pamela's behalf, as there is no rational explanation for allowing Pamela to undercut the value of the couple's most valuable real property community asset, when Stephen had previously provided a higher valuation. Indeed, the discovery response containing the $500,000 valuation was submitted upon Stephen's oath, making it difficult for him to later assert a lesser value. While it is ordinarily true that an attorney can accept the client's valuation of property without performing an independent investigation thereof, an attorney in a divorce proceeding must also pursue the most equitable division of community assets for his or her client. Accepting Stephen's proposed value, or making a minimal investigation into the value of the Crescent Rim property because Pamela provided him a substantially lower value, would have demonstrated the diligence and competence that is expected of an attorney in Gatewood's position. At the very least, Gatewood was obligated to advise Pamela of Stephen's higher valuation and discuss the legal implications of her proposing a lesser value. Instead, Gatewood failed to provide Pamela with information that was critical for her to make an informed decision.

There is also evidence that Stephen was credited for a $28,000 judgment lien against the Crescent Rim property, when it had been paid off nearly two months before the settlement. Gatewood testified that he had no knowledge that the debt had been paid prior to settlement and further testified that, even if he had known, it would not have changed the settlement agreement because he believed Pamela was receiving adequate temporary maintenance. This justification does not embody the type of zealous representation that is expected of an attorney in reaching the most equitable property distribution in a divorce case, nor does it embody the type of thoroughness and investigation that would be expected of a competent attorney in Gatewood's position.

Because the district court's finding that Gatewood breached his duties to Pamela by failing to investigate, inform, and advise her regarding the value of the Crescent Rim property is

supported by substantial, albeit conflicting, evidence, we affirm the district court's holding that Gatewood committed legal malpractice in his representation of Pamela.

### C. Sallaz & Gatewood, Chtd., is Liable for Gatewood's Malpractice.

Appellants argue that Sallaz & Gatewood, Chtd., cannot be held liable for Gatewood's malpractice because the entity is not licensed to practice law, as is "required" by I.C. § 5-219. They point to language stating that "professional malpractice," as used in the statute, "refers to wrongful acts or omissions in the performance of professional services by any person, firm, association, entity or corporation licensed to perform such services under the law of the state of Idaho." I.C. § 5-219(4). On the other hand, Pamela argues that liability is appropriate based on the plain language of I.C. § 30-1306. The district court determined that Gatewood had committed malpractice and that the firm of Sallaz & Gatewood, Chtd., in addition to Gatewood individually, was liable to Pamela in the amount of $27,435.00.

In support of their argument that I.C. § 5-219 negates a claim for professional malpractice against an entity that is not licensed to perform the services in question, Appellants cite *Owyhee County v. Rife*, 100 Idaho 91, 593 P.2d 995 (1979). In that case, the Court considered whether the two-year statute of limitations in I.C. § 5-219(4) applied to accountants who were not at that time required to be licensed. *Id.* at 96, 593 P.2d at 1000. The Court determined that the statute did not apply to the accountants because they were unlicensed. *Id.* That did not mean, however, that they were not subject to a malpractice suit. It only meant that the longer four-year statute of limitations in either I.C. § 5-217 or I.C. § 5-224 applied. *Id.* Nothing in I.C. § 5-219 or in *Rife* immunizes a person or entity carrying on a profession from being sued for malpractice, just because the applicable professional standards do not require the particular person or entity to have a license. Statutes of limitation do not have a bearing on professional malpractice claims, other than to establish the time in which they must be brought.

Idaho's corporate code applies here and it is clear that a corporation is liable for the negligent or wrongful act of employees acting on behalf of the corporation. I.C. § 30-1304 provides that a group of licensed individuals rendering the same professional service may organize for the purpose of forming a professional service corporation. I.C. § 30-1306 further provides that the corporation will be liable for the wrongful acts of its agents. "The corporation shall be liable up to the full value of its property for any negligent or wrongful acts or misconduct committed by any of its officers, shareholders, agents or employees while they are

engaged on behalf of the corporation in the rendering of professional services." I.C. § 30-1306. Therefore, the district court correctly ruled that Sallaz & Gatewood, Chtd., is liable for Gatewood's malpractice.[4]

### D. Pamela's Argument Concerning Sallaz's Personal Liability is Moot.

Pamela argues on cross-appeal that the district court erred by failing to impose personal liability against Sallaz because the firm had not yet incorporated at the time Pamela executed the fee agreement and that, as a general partnership, Sallaz would be jointly liable for Gatewood's malpractice. Appellants argue there is no basis to impose personal liability against Sallaz because he never formed an attorney-client relationship with Pamela. The district court determined that Pamela's professional malpractice claim did not arise until after Sallaz & Gatewood, Chtd., had incorporated and, therefore, Sallaz was shielded from any personal liability.

It was disclosed in the record, and confirmed in oral argument, that Pamela has already been paid the full amount of the judgment. Therefore, any ruling on this issue would have no practical effect. Thus, the issue is moot. Additionally, such a determination would require evidence of the law firm's status at the time of executing the fee agreement and during the course of its subsequent representation of Pamela, including in particular whether or not the corporation assumed the obligations of the partnership, none of which is in the record. Therefore, this Court declines to address the issue.

> This Court may dismiss an appeal when it appears that the case involves only a moot question. A case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. A case is moot if it presents no justiciable controversy and a judicial determination will have no practical effect upon the outcome.

*Goodson v. Nez Perce County Bd. of County Comm'rs*, 133 Idaho 851, 853, 993 P.2d 614, 616 (2000) (internal citations omitted). The same applies to a discrete issue in an appeal. The Court may nonetheless rule on a moot issue "(1) when there is the possibility of collateral legal consequences imposed on the person raising the issue; (2) when the challenged conduct is likely to evade judicial review and thus is capable of repetition; and (3) when an otherwise moot issue

---

[4] There is insufficient evidence before this Court to determine whether Sallaz & Gatewood, Chtd., was acting in its partnership capacity, or in its corporate capacity, when entering into the fee agreement with, and subsequently providing representation for, Pamela. However, even if the firm was acting as a partnership, the firm would still be liable for Gatewood's malpractice. *See* I.C. § 53-3-305(a).

raises concerns of substantial public interest." *Idaho Dep't of Health and Welfare v. Doe*, 150 Idaho 103, 108, 244 P.3d 247, 252 (Ct. App. 2010) (internal citations omitted).

In this case, a determination that Sallaz, in addition to Gatewood, is personally liable for the malpractice judgment would have "no practical effect upon the outcome" because the judgment has already been paid and satisfied. Therefore, there is no risk that Gatewood, or the firm, would not be able to pay the judgment. Additionally, there is no risk of repetition of harm and there are no public policy concerns at play that would warrant the application of the mootness exceptions. Indeed, the only effect of a determination of whether or not Sallaz is liable would be upon the district court's denial of a fee award to Sallaz, i.e. if he is liable, denial of the fee was proper but, if he is not liable, the reverse may be the case. However, because we hold that neither party is entitled to attorney fees under I.C. § 12-120(3), there is no need to address the issue.

### E. The District Court Did Not Commit Error in its Assessment of Damages.

Pamela also argues on cross-appeal that the court erred by reducing her $41,500 malpractice damage award by $14,065. In the divorce proceedings, using the values employed in the property settlement agreement, Pamela was to receive $33,935 as her half of the net value of the community estate. Stephen did not have the funds to pay that amount in a lump sum at the time of settlement, so it was agreed that he would pay in monthly installments over a period of 24 months. In exchange for allowing him to pay on a deferred basis, it was agreed that Stephen would pay $2,000 per month—a premium, presumably for loss of use of the money. Pamela claims her damages should include the premium amount for which she bargained, which represents the $14,065 reduction by the district court in the malpractice award.

This Court reviews a district court's determination of damages pursuant to a clearly erroneous standard. *See* I.R.C.P. 52(a). *See also Young v. Scott*, 108 Idaho 506, 510, 700 P.2d 128, 132 (Ct. App. 1985). In this case, the district court determined that Gatewood's negligence caused Pamela to value the Crescent Rim property at $385,000, when the actual fair market value was $440,000—a difference of $55,000. Additionally, the district court found that Gatewood's failure to take into account the payoff of the $28,000 judgment lien against the property increased the value of the community estate by an additional $28,000. Therefore, Gatewood's breach caused $83,000 in total damages, entitling Pamela to recover $41,500 (one-half of the community's increased net value). However, the court determined that Pamela had

already been paid $14,065 pursuant to the stipulated settlement agreement, such that her malpractice award must be reduced to avoid double payment. The district court reasoned that such payments exceeded her portion of the net value of the community estate by $14,065 and, therefore, reduced her malpractice damages to $27,435.

The court declined to grant Pamela the premium she negotiated on the amount Stephen owed her in the divorce settlement. However, the court did award pre-judgment interest on the additional amount that it determined Pamela should have received in the divorce. This determination of damages is not clearly erroneous and, therefore, the district court's award is affirmed.

### F. Neither Party is Entitled to Attorney Fees Under I.C. § 12-120(3).

Sallaz argues the district court erred in denying him attorney fees pursuant to I.C. § 12-120(3) because attorney malpractice cases have been determined to be commercial transactions within the meaning of the statute,[5] and because the district court erred in not holding him to be the prevailing party. Pamela argues that the district court did not abuse its discretion in denying Sallaz's request because she was the overall prevailing party. We hold that neither party is entitled to attorney fees under I.C. § 12-120(3) because neither party made an appropriate fee request under that statute in the district court.

It is oft repeated by this Court that, "If the party is claiming that a statute provides authority for an award of attorney fees, the party must cite to the statute and, if applicable, the specific subsection of the statute upon which the party relies." *Bream v. Benscoter*, 139 Idaho 364, 369, 79 P.3d 723, 728 (2003). We continued:

> For example, if the party seeks an award of attorney fees under Idaho Code §12-120(3) on the ground that the case is an action to recover in a commercial transaction, the party should, to the extent necessary, provide facts, authority, and argument supporting the claim that the case involves a "commercial transaction" and that such transaction is the gravamen of the lawsuit.

*Id.* at 369-70, 79 P.3d at 728-29 (2003). Neither party paid heed to this holding in district court.

---

[5] In connection with this argument, Sallaz cites *City of McCall v. Buxton*, 146 Idaho 656, 201 P.3d 629 (2009) wherein we held that, "The commercial transaction ground in I.C. § 12-120(3) neither prohibits a fee award for a commercial transaction that involves tortious conduct, nor does it require that there be a contract." *Id.* at 665, 201 P.3d at 638. That case involved a professional malpractice claim arising out of what appeared to be a commercial transaction. We noted that a fee award might be appropriate in such a case. *Id.* However, we need not determine whether this case involved a commercial transaction, nor whether the judge erred by failing to find Sallaz to be the prevailing party. A requisite for obtaining a fee award is to make a proper request therefore, which did not happen in this case.

Pamela failed to request attorney fees pursuant to any provision of I.C. § 12-120. Therefore, she was not entitled to a fee award under that section. In his fee request, Sallaz got a little closer to the mark but did not go far enough. In his motion for an award of fees, he cited I.C. §§ 12-120 and 12-121. He did not appeal the denial of fees under I.C. § 12-121 and did not identify the specific provision of I.C. § 12-120 pursuant to which he sought fees. In his memorandum of costs and fees, he identified I.C. § 12-121, I.C. § 12-123, and several civil procedure rules in support of his fee request. He did hint at I.C. § 12-120(3), stating "[p]ursuant to Rule 54(e)(3), Idaho Rules of Civil Procedure, as well as Idaho Code § 12-120(3), I hereby state that the total amount of attorney's fees incurred by Defendant . . ." However, the document does not disclose whether he purports to seek fees based on a contract or on the commercial transaction ground. Thus, the fee request was deficient and the district court properly denied his fee request, albeit for other reasons.

### G.  Pamela is Not Entitled to Discretionary Costs.

Pamela argues the district court erred in failing to award her discretionary costs relating to the appointment of a guardian ad litem in the malpractice case. Idaho Rule of Civil Procedure 54(d)(1)(D) provides that a court may award discretionary costs where they are demonstrated to be "necessary and exceptional." However, all requests for costs must be supported by an itemized memorandum filed no later than 14 days after the entry of judgment. I.R.C.P. 54(d)(5). The judgment was entered in this case on December 1, 2008, and as of February 9, 2009, Pamela's request for discretionary costs was not supported by an itemization of such costs. Although Pamela claims to have subsequently filed such an itemization, in order to meet the timeline set forth in the rule, this itemization had to be filed no later than December 15, 2008— 14 days after the December 1, 2008, judgment—in order to be timely. Because Pamela's claim for discretionary costs was not timely made, the district court did not abuse its discretion in denying her request.

### H.  Attorney Fees on Appeal.

Both parties request an award of attorney fees on appeal. However, neither party can be characterized as the prevailing party in this case, both parties having prevailed and lost in about equal proportions.

## IV.
## Conclusion

The judgment of the district court is affirmed. We decline to award costs and attorney fees to any of the parties on appeal.


Chief Justice EISMANN, and Justices BURDICK, W. JONES and HORTON CONCUR.